[No. 24470. Department Two. August 18, 1933.]

ROBERT W. ROSS, *Respondent*, v. OLIVER H. JONES *et al.*, *Defendants*, BENJAMIN R. LABEREE *et al.*, *Appellants.*[1]

[1]Reported in 24 P. (2d) 622.

*O. C. Moore,* for appellants Laberee *et al.*

*Roy A. Redfield,* for appellant National Fire Insurance Co.

*Brown & Weller* and *Tustin & Chandler,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this action to foreclose a mortgage dated July 7, 1930, given to secure the payment of a note of even date therewith for seventeen thousand dollars made by the defendants Jones to his order. Appellants Laberee were made defendants upon the theory that they had some interest or title in or to the mortgaged lands which were subsequent and junior to the mortgage.

The Laberees answered the complaint, making admissions and denials, and affirmatively alleged that the note and mortgage were wholly without consideration, were made with fraudulent intent and were void as to them, they being subsequent purchasers of the real estate. Plaintiff replied, denying lack of consideration and fraud.

The National Fire Insurance Company, having first obtained leave of the court, filed its complaint in intervention alleging the issuance by it of a policy of insurance against loss by fire covering the buildings on the mortgaged premises which was intended to insure the interest of the mortgagee only, but that, by mutual mistake, the policy was inadvertently issued, delivered and accepted in form so as to be payable first, to the mortgagee and second, to Jones and Laberee; that

there had been a loss under such policy during the pendency of the action, not yet adjusted, but if the mortgage was without consideration, fraudulent or void, then there was no mortgagee's interest to insure and the policy also was void. Intervener further pleaded that, if there was a liability on the mortgagee and consequently under the policy, then it had a right to subrogation under the terms of the policy. The prayer of the intervener was (1) for a discharge of its liability on the policy if the mortgage was held to be invalid; (2) if the mortgage was held valid, that the amount of its liability be adjudicated, and that it be subrogated to the rights of the plaintiff, the mortgagee, to the full amount of such liability; and (3) for general relief.

The defendants Laberee answered the complaint in intervention, raising such issues as might be of advantage to them. Plaintiff answered the complaint of intervention by admitting the mutual mistake in the terms of the policy as issued, by claiming a total loss under the policy, and by praying for judgment against the intervener in the sum of nine thousand dollars.

Defendants R. C. Ross and wife did not appear, and they, together with other defendants not appearing, were, on plaintiff's application, adjudged in default.

In his opening statement to the court when the cause was called for trial, counsel for plaintiff asked the court to set aside the order of default as to defendants R. C. Ross and wife, and in answer to a question of the court gave the reason for his request in the following words:

"For the reason that we will show, and never have denied, that R. C. Ross has an interest in the property; that is, he holds under the trustee, and now we have brought the action in R. W. Ross as trustee. We have never denied that he was holding it as trustee for his father. The mortgage and note is not made out as trustee, it is simply made to R. W. Ross, but the facts

will show that he was acting as trustee for his father, and the whole thing was done for the purpose of preventing a merger in the title. That is the situation as it stands now.''

No ruling upon this request is disclosed by the record, but all parties seem to have thereafter proceeded upon the assumption that it had been granted. Our attention has not been called to anything occurring in the course of the trial below based upon, or calling attention to, the failure to set aside the default as to R. C. Ross and wife.

The trial on the merits resulted in findings of fact upholding the note and mortgage, finding that the fire insurance was placed by the mortgagee solely for his own benefit; that a mutual mistake in the terms of the policy had occurred as alleged, and that defendants Jones and Laberee had no interest therein or thereunder; fixing the amount of the loss at nine thousand dollars, and

''That the policy here in suit contains the following provision relative to subrogation, which provision the court finds to have been a part of the policy when originally issued and still binding upon the parties hereto.

'' '(6) Whenever this company shall pay any mortgagee (trustee or beneficiary under deed of trust) hereinabove named any sum for loss or damage under this policy, and shall claim that, as to the mortgager, trustor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security of every kind for the debt secured by such mortgage or deed of trust, and such mortgagee, (or trustee or beneficiary) shall, upon such payment, execute to this company articles of subrogation evidencing the same. The company may also at its option, in such case, pay to such mortgagee (or trustee or beneficiary under deed of trust) the whole principal due or to grow due

on such mortgage or deed of trust, with interest, and shall thereupon receive a full assignment and transfer of such mortgage or deed of trust and all such other security; but no subrogation shall impair the right of the mortgagee, (or trustee or beneficiary under deed of trust) to recover the full amount of the claim of such mortgagee (or trustee or beneficiary)'."

By its conclusions of law and decree, the trial court directed the foreclosure of the mortgage for the full· sum secured, plus attorney's fees and costs; that the policy of fire insurance be reformed so as to express the true intent and meaning of the parties and so as to exclude all of the defendants except R. C. Ross from participation in any of the benefits of the insurance; fixing the liability of the intervener under the policy at nine thousand dollars and providing that, upon the payment of that sum, the intervener be subrogated to the lien of the mortgage *pro tanto,* subject to the additional terms of the policy reserving to the insured the right to obtain full satisfaction of his claim unimpaired by reason of the subrogation. The extent of the subrogation fully appears from that portion of the decree which reads:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the sheriff's sale is to a third party for cash, the proceeds thereof shall be first applied to the balance due Robert W. Ross, plaintiff, over and above the $9,000 due from the insurance company. If the proceeds of said sale are more than sufficient to make complete payment to plaintiff, Robert W. Ross, (Crediting first for this purpose the $9,000, it to be paid by the insurance company) then any excess of such sum shall be applied in payment of the intervener's interest in the mortgage, acquired by it through the right of subrogation herein recognized.

"If said real estate shall be bid in at the sheriff's sale by plaintiff for the full amount of the judgment against defendants Jones, such purchase shall not operate to extinguish any part of the $9,000 judgment

against the intervening insurance company, but upon the payment to plaintiff of the said $9,000 judgment by the intervening insurance company within the time allowed for redemption, the plaintiff shall hold said sheriff's certificate of sale for the benefit of plaintiff and said insurance company as herein stated. If redemption is made by any party other than said insurance company during the statutory period, the proceeds of redemption shall be applied first to the satisfaction of any balance due upon that part of the debt represented by the interest of plaintiff. If there is a balance over and above the sum necessary for such purpose, the further proceeds of redemption shall be payable to the intervening insurance company and said trust closed by disbursements in accordance herewith. The intervening insurance company may redeem during the statutory period and shall be allowed credit on such redemption for the amount of said insurance paid by it. If there be no redemption, the sheriff's deed shall issue to Robert W. Ross, or his assigns, in trust for R. C. Ross, free from any claims of the intervening insurance company.''

From this judgment, the defendants Benjamin R. Laberee and wife have appealed, raising numerous questions. The intervener National Fire Insurance Company has also appealed, raising the same questions as those raised by appellants Laberee and wife as to the validity of the mortgage, and further assigning error upon the amount found due under the policy of insurance and the limitation placed upon its subrogation right by the decree of the trial court.

We shall first discuss the matters raised by appellants Laberee and, in connection therewith, will dispose of all of the like errors assigned by the appellant National Fire Insurance Company without particular reference thereto, leaving for consideration under a later heading only those errors raised independently by the appellant intervener.

Appellants Laberee in several respects seriously

question the facts as found by the trial court, which necessitates a brief and somewhat general statement of the facts as we find them which surround and relate to the execution of the note and mortgage, the consideration therefor, and like questions bearing upon the rights of appellants Laberee.

In June, 1930, R. C. Ross and wife were the owners of the property here involved, consisting of a large and valuable farm, well improved with unusually fine buildings, together with a herd of dairy cattle there kept and all the equipment used in connection therewith. Ross reached an agreement with the defendant Jones by the terms of which the farm, the cattle and the equipment were to be acquired by Jones for a consideration of $55,000. Of this sum, $16,200 was to be paid by the conveyance by Jones to Ross of certain other property taken at that valuation in exchange, and the balance of $38,800 was to be paid in installments. Ross reserved the right to place a $17,000 mortgage on the real estate, which Jones would assume and pay as a part of the remainder of the purchase price. The contract was so drawn, but not at that time executed.

Some ten days later, and on July 7, 1930, when the parties met to close the transaction, it was suggested that the $17,000 mortgage, already agreed upon, should be then executed and the whole matter put in final shape. Without changing the terms of the proposed contract already prepared, but before its execution and to avoid any question as to a merger of the legal and the equitable titles, counsel for Ross suggesting the course to be followed, Ross and wife executed and delivered to Jones a deed vesting title to the real estate in him. Jones and wife executed and delivered to Robert W. Ross (the respondent), as trustee for R. C. Ross and wife, although the word "trustee" was not used in the instruments, the note and mortgage for

$17,000 upon which this action is based, and immediately thereafter Jones and wife deeded the real estate back to R. C. Ross, subject to the $17,000 mortgage. These deeds were duly recorded in proper order. Then, to complete the transaction, the original draft of the contract was executed by the parties, and R. C. Ross and wife executed a deed to the real estate running to Jones as grantee, subject to the $17,000 mortgage, to be placed in escrow and to be delivered only when the purchase price was fully paid.

By this circumlocution, there was accomplished just exactly what had been originally contemplated and what the parties desired to accomplish, namely: the balance owing by Jones was represented by the $17,000 mortgage and by $21,800 still payable according to the terms of the contract. The purchase price to be paid by Jones was neither increased nor diminished, and its due dates were as the parties had fixed by the terms of the two instruments instead of by one only. This transaction was consummated by the delivery of possession to Jones, who proceeded to conduct and operate the farm.

After Jones took possession and in October following the making of the mortgage, R. C. Ross sold and assigned the vendor's interest in the Jones contract to appellants Laberee, together with all sums to become due thereon, then amounting to $20,500, and by quitclaim deed as a part of the same transaction Ross and wife conveyed the land to the Laberees, subject to the $17,000 mortgage. A little more than a year later, Jones abandoned the contract, vacated the farm, and possession passed to the Laberees. The mortgage became in default through non-payment of interest and taxes, and this action followed.

The facts, as we find them to be, harmonize with the somewhat general findings of the trial court,

and demonstrate very clearly that a considerable number of appellants' assignments of error are not well taken. Without discussing them in detail, it seems sufficient to say that there was full and ample consideration for the $17,000 note and mortgage. The whole amount was a part of the purchase price which Jones had agreed to pay for the property. There was no fraud inhering in the transaction. The parties fully understood what they desired to accomplish, and the means they used brought about the results which they desired.

That respondent Robert W. Ross was made the payee of the note and the mortgagee, concerns no one but the Ross family. Had he chosen to deny his parents' interest in the mortgage, that might have made trouble in the family, but that situation in no way concerns appellants, who acquired their interest subject to the mortgage. They can be neither benefited nor harmed by any one person more than another who asserts the rights of a mortgagee. It is immaterial to them whether the mortgage be foreclosed by Robert W. Ross as an individual, by Robert W. Ross as trustee, or by R. C. Ross, or his wife, or both. In any such event, still the appellants Laberee took subject to the mortgage, and its legal existence as an enforcible obligation is the only question with which they are concerned.

The mere entry of a default against R. C. Ross and wife could be waived by the plaintiff, in whose interest and on whose motion the default was taken, and even if not expressly waived, the plaintiff by his own consent and voluntary action asked the court to write into the decree the provision limiting his title to that of a trustee for his father and mother. Again, that affects no right of the appellants.

Nor do we see any relevancy in the argument

that the later forfeiting of the Jones contract (if it was forfeited) rendered the mortgage unenforcible. Appellants bought the sellers' interest in a contract which was then in good standing. They took a deed to protect them if the contract should be forfeited, which deed, by its terms, was made subject to the mortgage. They received exactly what they purchased, namely: title to the junior payments to be made by Jones, knowing that the senior payments to be made by Jones were evidenced by the mortgage and had superior rights.

We have not analyzed and discussed the many authorities cited by appellants under the various heads which our discussion has indicated, because, as we see the facts, no one of such authorities has any application here.

Appellants assign a considerable number of errors relating to the intervention by the Insurance Company, questioning the right to intervene at all, the sufficiency of the complaint in intervention, the finding of mutual or any mistake in the form of the policy as written, the awarding of the insurance money to Ross to the exclusion of the appellants, and the like.

The statute, Rem. Rev. Stat., § 202, provides:

"Any person may before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both."

The intervener did not base its complaint upon the claim of being a creditor, but strictly and solely upon its rights as an insurer under its contract for subrogation. Clearly, as we see it, it had an interest in the matter in litigation: first, to limit its liability to the interest of the mortgagee so that if the mortgage was held to be invalid it might escape liability, and of course, until that question was determined, it could

not tender any amount or pay any sum without a possibility of waiving its rights; and second, if the mortgage was held to be valid and the insurer liable, it was necessary for it to present its theory of its rights of subrogation and have those rights determined and established so that it might receive the benefit of its contract in that respect and, being subrogated to any extent or in any amount to the rights of the mortgagee under the mortgage, it would be in legal effect a mortgagee to that extent and therefore a proper and necessary party to the action foreclosing the mortgage.

As to the question of mutual mistake, we have read the evidence with care, and do not see how the court could have found other than it did. The facts being as they are, it follows that appellants have no interest in the insurance, and there was no error in excluding them from participation.

The failure to specifically pray for the reformation of the policy is immaterial. The facts were stated in the complaint in intervention and there was a prayer for general relief, which, under all the authorities, entitled the litigant to such relief in equity as the facts pleaded warrant.

We find no error of which appellants Laberee can complain, and on their appeal the judgment is affirmed.

Intervener by its appeal raises two additional questions relating only to its own rights.

(1) That the amount allowed is excessive, and (2) that its right to subrogation as reserved in the policy was not adequately established and protected by the decree.

The first question is one of fact only, and we cannot extend this already over-long opinion by discussion of the evidence in detail. It must therefore suffice to say that we have read the testimony with care, and, it being opinion evidence mainly relating to rebuilding costs,

depreciation, and the like, the trial court, who heard and saw the witnesses, was in a better position to determine the convincing weight of the testimony than are we. We find nothing to justify the conclusion that the evidence preponderates against the findings, and we therefore cannot disturb them.

The final question as to the extent of the rights of subrogation is, indeed, an interesting one and one which might well warrant a more extended discussion than we can now give to it.

The subrogation provision of the policy has already been quoted as a part of the facts found by the trial court. Appellants' contentions present a question new in this state, and scarcely hinted at by the somewhat casual reference to subrogation contained in the case of *Oregon Mortgage Co. v. Hartford Fire Insurance Co.,* 122 Wash. 183, 210 Pac. 385. In no other case, apparently, have we discussed similar subrogation rights.

Subrogation is of two kinds, legal subrogation arising by operation of law, and conventional subrogation arising out of contract. 60 C. J. 694. We have to do here with conventional subrogation only, and since it arises out of contract, the first and primary question is, as in the construction of all other contracts: What did the parties mean and intend to accomplish by the language which they used?

The general language of the subrogation clause of the policy here involved is broad enough to warrant the conclusion which appellant puts upon it, i. e., that, upon payment, the insurer would immediately become an owner *pro tanto* in the mortgage, or, foreclosure having taken place, an owner *pro tanto* in the land and a tenant in common with the insurer who purchased the land at foreclosure sale, and entitled to have his interest recognized as continuing after the period for redemption had expired. But there is a qualifying

clause immediately following the broad language to which we have referred, which qualifying clause must be given its full effect. That qualifying clause reads:

" . . . but no subrogation shall impair the right of the mortgagee . . . to recover the full amount of the claim of such mortgagee . . . "

As matters now stand, the mortgagee is the purchaser at sheriff's sale, and entitled to have full payment of his debt if redemption takes place, and no more. The decree so provides, and no one now questions that provision; but if there be no redemption and the sheriff's deed issues to the mortgagee as purchaser, still, as between himself and the insurer, he will be entitled, by reason of this qualifying clause in the contract, to receive full payment of his debt unhampered by the subrogation rights of the insurer.

If, as appellant contends, upon the issuance of the sheriff's deed the mortgagee purchaser and the insurer become tenants in common, then the mortgagee purchaser can no longer sell the land for an amount which will pay the balance of his debt, but can only sell his *pro tanto* interest in the land, which may not be salable for an amount which will make him whole. His only other possibility of securing payment of his debt would be by concerted action with his co-owner in negotiating a sale, but the necessity of consulting his co-owner would give to it the power to impair his right to sell for enough to make him whole, and thus the qualifying clause of the contract would be violated.

The provision in the contract giving the insurer the right to pay the whole debt and take a full assignment was, we are convinced, placed in the contract for the very purpose of meeting the situation. So that, if no one redeems from the foreclosure sale, the insurer may still pay the whole debt to the insured and take to itself the whole of the security by way of subrogation.

We have carefully read all of the authorities cited, but find little of assistance in any of them. In several of the cases, similar contracts of subrogation were under consideration, but the particular point which we are here considering seems not to have been raised in any of the cases cited. The following cases, perhaps more or less remotely, throw light upon the subject, and may assist in a better understanding of the theory upon which our argument is based: *Savings Bank of Ansonia v. Schancupp,* 108 Conn. 588, 144 Atl. 36, 63 A. L. R. 1521; *Carroll v. Hartford Fire Ins. Co.,* 28 Ida. 466, 154 Pac. 985; *Eddy v. London Assurance Corporation,* 143 N. Y. 311, 38 N. E. 307, 25 L. R. A. 686; *Young Men's Lyceum of Tarrytown v. National Ben Franklin Fire Ins. Co.,* 177 App. Div. 351, 163 N. Y. Supp. 226; and *Connelly v. Usko Holding Corporation,* 141 Misc. Rep. 837, 253 N. Y. Supp. 299. The *Eddy* case, *supra,* by the reasoning employed, rather strongly tends to support our views.

We find no authority holding contrary to our reasoning, or which we consider to be an authority against the conclusion which we have reached.

We are convinced that the judgment of the trial court is right, and it is affirmed upon the appeal of the intervener as well as upon the appeal of appellants Laberee.

BEALS, C. J., MAIN, STEINERT, and MILLARD, JJ., concur.