[No. 50507–1. En Banc. January 10, 1985.]

TRANSAMERICA TITLE INSURANCE COMPANY, *Respondent,* v. CYRIL C. JOHNSON, ET AL, *Defendants,* JOHNSON AND SONS BUILDERS, INC., *Petitioner.*

410

*Duncan A. Bonjorni* and *David G. Kontos,* for petitioner.

*Billett, Comfort & Rosenow,* by *Todd M. Worswick* and *A. Clarke Johnson,* for respondent.

*Judd Kirk* and *Bruce Lamka* on behalf of Washington Land Title Association, amici curiae for respondent.

BRACHTENBACH, J.—Plaintiff issued title insurance policies for three parcels of real estate. The defendant corporation was the seller–grantor. The insureds were the purchasers–grantees. Plaintiff failed to except from coverage a sewer assessment lien on each parcel. It paid the assessments and sued the seller–grantor corporation under its policy subrogation rights. The trial court granted summary judgment against the defendant corporation. The Court of Appeals affirmed by an unpublished opinion. *Transamerica Title Ins. Co. v. Johnson,* 37 Wn. App. 1005 (1984). We affirm.

The facts are not disputed. The defendant corporation, a developer/homebuilder, purchased vacant lots for the purpose of building residences thereon. At the time of purchase preliminary sewer district assessments had been made. The preliminary assessments were disclosed in title insurance policies issued by another title company, which the corporation, as the purchaser, received.

The corporation's president testified by deposition:

Q. When you purchased those three parcels of property, did you know about the sewer assessments?

A. Yes.

Q. And when you purchased those three parcels, they would have been subject to that assessment, I take it?

A. That's right.

Clerk's Papers, at 111–12.

Soon after purchase the corporation listed the properties for sale. The listing agreements provided that the "buyer [is] to assume sewer assessment for U.L.I.D. # 22, Cascade Sewer District". Later the listing agreements were amended to delete the requirement that the buyer assume the assessment. The earnest money agreements, signed by defendant corporation as seller, provided that title was to be free of encumbrances. These listing agreements and earnest money agreements were signed long before any involvement by or with plaintiff title company. Finally, the conveying statutory warranty deeds did not make title subject to the assessments.

When the plaintiff issued its "preliminary commitment for title insurance"[1] for each of the parcels, the preliminary sewer assessments had become final and were liens on the parcels. Neither the preliminary commitments nor the policies, ultimately insuring the purchasers' title, disclosed the assessments.

There is no dispute that (1) the plaintiff was negligent in not disclosing the assessments and (2) the defendant corporation breached its warranty of title and its contractual obligations to its purchasers.

The policies issued to the purchasers provided:

When the Company [plaintiff] shall have paid a claim hereunder it shall be subrogated to all rights and remedies which the insured [the purchaser–grantee] may have against any person or property with respect to such claim, or would have if this policy had not been issued, and the insured shall transfer all such rights to the Company.

Clerk's Papers, at 292.

The main thrust of defendant's argument is that the plaintiff, in issuing a preliminary commitment for title

---

[1]A preliminary commitment for title insurance is generally issued to the purchaser of the policy to inform them what will and will not be covered by the title insurance policy.

insurance, acts as an abstractor of title with a duty to disclose all discoverable defects. The defendant asserts that this case presents the typical transaction in which the seller pays the premium even though the purchaser is ultimately the insured under the title insurance policy. Therefore, the defendant argues that in addition to the duties under the policy to insure the purchaser subject to the exceptions, terms and conditions of the preliminary report, the title insurer owes the duties of search and disclosure to the seller.

It is apparent that the defendant seeks to impose liability upon the title insurance company which is beyond that contained in the policy itself. The defendant is not an insured under that policy and is not provided coverage therein. It, therefore, does not seek to impose liability based on a theory of contractual liability. Rather, defendant would have us impose an abstractor's duty upon the title insurance company and would extend that duty to the seller–applicant. Necessarily the existence of that duty depends upon an analysis of the expectations and obligations running from the title insurance company to the seller–applicant, the noninsured grantor who has previously contractually agreed to provide its buyer with a specified form of title insurance policy. Regardless of the label given the ultimate theory relied upon, the suggested action sounds in tort. The measure of damages would not be limited to policy limits and the title company's risk or premium would not be limited to a traditional risk of loss vis–a–vis an actuarial determination of premium.

A proper inquiry into a duty to search and disclose owed a noninsured also involves an examination of the historical methods of title evidencing and title assurance, together with an exploration of the practices, expectations, intentions and consequences of the adoption of judicially imposed standards. We have previously faced the issue of whether to impose an abstractor's duty of search and disclosure on title insurance companies but reserved determination of this broadly stated question. *Shotwell v.*

*Transamerica Title Ins. Co.,* 91 Wn.2d 161, 165, 588 P.2d 208 (1978). The theories asserted here are not new or unique. *See* materials cited in *Shotwell,* at 165; Levinson, "A Return to Policy Limits: Title Insurance Company Liability in California", in *Title Insurance in Current Transactions 1983,* at 261 (P.L.I. 1983); Rubin, "Title Insurance Claims Developments in the 80's—Significant Case Law Developments Applicable to Title Insurance Claims", in *Title Insurance in Current Transactions 1983,* at 307 (P.L.I. 1983). Once more, however, we cannot reach a definitive analysis and conclusion.

██ In a proper case, this court could analyze, determine and adopt the boundaries of potential rights, duties and resultant liability. There are two reasons for not using this case as a vehicle for an exhaustive treatment of this vital subject. First, the record is devoid of any evidence, factual or empirical, of the practices, intentions, expectations or consequences of adopting or rejecting the various theories of liability or nonliability. In absence of a full adversary review of such evidence, caution is warranted when considering a departure from long established precedent. *Shotwell v. Transamerica Title Ins. Co., supra.* Further, as a factual matter and on this record, this defendant must lose under the most liberal analysis of potential liability. Whether potential liability of the title insurance company be cast in terms of duty or reliance, this defendant cannot prevail.

Potential liability would be based on a duty of the plaintiff to advise the defendant of the existence of encumbrances. Duty is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." W. Prosser, *Torts* § 53, at 331 (3d ed. 1964).

> [N]o action could be founded upon the breach of a duty owed only to some person other than the plaintiff. He must bring himself within the scope of a definite legal obligation, so that it might be regarded as personal to him. "Negligence in the air, so to speak, will not do."

(Footnote omitted.) Prosser, at 332. Some jurisdictions

have held that no duty is owed to vendors who pay title insurance premiums for the protection of the insured vendees and that any search actually undertaken was for the protection of the insurance company. *Horn v. Lawyers Title Ins. Corp.*, 89 N.M. 709, 557 P.2d 206 (1976); *Wolff v. Commercial Standard Ins. Co.*, 345 S.W.2d 565 (Tex. Civ. App. 1961). Although the title insurer may be negligent, where no duty is owed the vendor, there is no liability extending to the vendor.

Other jurisdictions have recognized a duty on the part of the title insurance company extending to other than the insured. *Malinak v. Safeco Title Ins. Co.*, ___ Mont. ___, 661 P.2d 12 (1983); *Kovaleski v. Tallahassee Title Co.*, 363 So. 2d 1156 (Fla. Dist. Ct. App. 1978); *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974); *Transamerica Title Ins. Co. v. Ramsey*, 507 P.2d 492 (Alaska 1973); *Chun v. Park*, 51 Hawaii 462, 462 P.2d 905 (1969). However, even assuming that we were to recognize such a duty, we would not impose liability here. In the cases cited by defendant, in addition to those cited herein, the courts have held a title insurance company liable on a duty to search and disclose only when the noninsured has shown foreseeable *reliance* upon the preliminary commitment or upon the representations of the title insurance company. Where it cannot be shown that the noninsured relied upon the search and disclosure and that this reliance was foreseeable, no liability based on such a duty can be imposed.

There is no showing, on this record, of reliance, damage or an expectation of a search and disclosure. This defendant knew of the assessments long before the plaintiff ever issued a preliminary commitment. When the defendant's agent ordered title insurance, the defendant had already listed the property subject to the buyer assuming the sewer assessment. The defendant's awareness and knowledge are evidenced by the deletion of the assumption requirement from the listing. Again, long before asking the plaintiff to insure title, the defendant had contractually agreed with its purchasers (the only insureds) to convey title free of the

assessments. There is no showing that this defendant expected an "abstract" of title or that even if it had, that it relied thereon in any manner. In fact, had the assessments been disclosed, the defendant would have had to pay them from the closing proceeds. The defendant is merely paying, through subrogation, that which it had knowledge of and had agreed to pay long before the plaintiff became involved.

The present case is factually similar to *Kenny v. Safeco Title Ins. Co.,* 113 Cal. App. 3d 557, 169 Cal. Rptr. 808 (1980). In *Kenny* the title insurance company, in exercise of subrogation rights, filed a complaint for damages against the vendors for breach of contract against encumbrances. The vendors there, as here, filed a cross complaint, alleging that the insurer's negligence in failing to note a lien precluded them from effecting a compromise and settlement. The *Kenny* court held that the vendors' prior knowledge of the tax lien foreclosed any reliance upon the policy of the title insurance and that, therefore, no liability based on the duty to advise the vendors of the lien existed. Similarly, the evidence here indicates prior knowledge of the encumbrance and a resultant lack of reliance upon the preliminary commitment. We adopt the rationale of *Kenny v. Safeco Title Ins. Co., supra,* and hold that where there is an absence of a showing of an expectation of a search and disclosure and foreseeable reliance thereon, there is no liability based on a duty to search and report to a noninsured vendor.

We once again reserve the broad question of the title insurance company's duty to search and disclose if reliance is shown. Allegations of negligent misrepresentation must fail for the same reason. This count falls within the ambit of Restatement (Second) of Torts § 552(1) and (2) (1977) which provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is

subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), [which pertains to the liability of one who is under a public duty to furnish such information] the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) *through reliance upon it* in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(Italics ours.)

The comment to subsection (2), pertaining to persons for whose guidance the information is supplied, states:

Under this Section . . . it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information *and foreseeably to take some action in reliance upon it.* It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given.

(Italics ours.) Restatement (Second) of Torts § 552, comment *h* (1977).

The courts in *Kenny v. Safeco Title Ins. Co., supra,* and

*Kovaleski v. Tallahassee Title Co., supra,* both cited Restatement (Second) of Torts § 552 and disallowed recovery by the noninsured against the title insurance company when the noninsured could not prove reliance upon the title insurance company's information. In *Warrington v. Transamerica Title Ins. Co.,* 40 Or. App. 841, 596 P.2d 627 (1979), the court also disallowed recovery based upon allegations of negligent misrepresentation because there was no proof that the title insurance company intended the plaintiff to rely upon the title report. In the present case, where defendant has failed to show reliance or damage and there is no proof that Transamerica Title Insurance Company intended for the preliminary report to serve as a complete abstract of title, we similarly deny recovery.

▉ Defendant also argues that the trial court erred in refusing to consider equitable defenses to this contractual subrogation claim. Some courts distinguish between legal and conventional or contractual subrogation. With conventional subrogation, subrogation given by agreement or stipulation, those courts measure the parties' rights by the agreement and find that equity has no power to change or unsettle such rights. *Mid–Continent Cas. Co. v. First Nat'l Bank & Trust Co.,* 531 P.2d 1370 (Okla. 1975); 16 G. Couch, *Insurance* § 61:2 (2d ed. 1983). We, however, follow those courts which hold that "the better rule is that regardless of the source of the right of subrogation, the right will only be enforced in favor of a meritorious claim and after a balancing of the equities." *Castleman Constr. Co. v. Pennington,* 222 Tenn. 82, 97, 432 S.W.2d 669 (1968). We hold that whether arising by operation of law or under contract, subrogation is an equitable remedy subject to equitable defenses.[2]

Nevertheless, the claim to equitable defenses must fail because defendant cannot claim a greater equity in balancing the circumstances of this case. Defendant had contrac-

---

[2]*Ross v. Jones,* 174 Wash. 205, 24 P.2d 622 (1933) overruled insofar as inconsistent.

tually agreed with its purchasers to convey title free of the assessments long before asking the plaintiff to insure title. Had the assessments been disclosed, the defendant would have had to pay them from the closing proceeds. Defendant was aware of these assessments prior to the issuance of the negligently issued preliminary commitment. Defendant cannot now use plaintiff's negligence to avoid its contractual obligations.

■ Lastly, defendant asserts that a violation of the Consumer Protection Act (CPA), RCW 19.86, occurs where the vendor purchases a title search, opinion and policy and the title company is negligent in its duty to perform a reasonable search. A cause of action for a per se violation of the CPA may be brought only by the insured. *Green v. Holm,* 28 Wn. App. 135, 622 P.2d 869 (1981). Therefore, defendant, as a noninsured, must rely on the public interest test for a violation of the CPA. In view of our disposition that there was no reliance shown by the defendant, any injury that defendant may have incurred was not the result of an act or practice of the plaintiff. Therefore, a cause of action under the public interest test would also fail.

The judgment is affirmed.

WILLIAMS, C.J., and UTTER, DOLLIVER, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., concur.

Reconsideration denied February 19, 1985.