NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-41                                              Appeals Court

     STEWART TITLE GUARANTY COMPANY  vs.  SHANE M. KELLY.


                          No. 19-P-41.

     Suffolk.     November 14, 2019. - April 17, 2020.

          Present:  Kinder, Neyman, & Wendlandt, JJ.



Insurance, Title insurance, Subrogation.  Subrogation.  Real
     Property, Mortgage, Title insurance.  Mortgage, Discharge.
     Contract, Insurance, Parties, Performance and breach,
     Unjust enrichment.  Unjust Enrichment.  Practice, Civil,
     Burden of proof, Summary judgment.




     Civil action commenced in the Superior Court Department on
July 28, 2016.

     The case was heard by Elizabeth M. Fahey, J., on motions
for summary judgment, and a motion for reconsideration was
considered by her.


     Beth R. Levenson (Scott J. Clifford also present) for the
plaintiff.
     Shane M. Kelly, pro se, submitted a brief.


     WENDLANDT, J.  This action presents occasion to address the

doctrine of subrogation in the context of a title insurance

policy, as well as the requirement of Mass. R. Civ. P. 56, 365

Mass. 824 (1974), that a party with the burden of proof on an issue at trial come forward with evidence supporting the essential elements of its claims. The plaintiff, Stewart Title Guaranty Company (Stewart Title), a title insurance company, brought the present action in Superior Court for breach of contract and unjust enrichment. It sought to recover monies it paid to discharge a first priority mortgage on real property in the Allston section of Boston (property) owned by the defendant, Shane M. Kelly. Stewart Title claimed that, pursuant to a title insurance policy it held with JPMorgan Chase Bank, N.A. (JPMorgan), the mortgagee on a second mortgage on the property, Stewart Title was subrogated to JPMorgan's right to pursue a claim against Kelly for breach of a provision of the second mortgage. That provision essentially required Kelly to discharge the first priority mortgage upon request by JPMorgan.

Kelly's defense principally relied on a theory that he had no contractual relationship with Stewart Title, specifically disputing Stewart Title's subrogation rights. It is undisputed that he was not aware, until the filing of the present action, that Stewart Title had paid to discharge the first mortgage. On cross motions for summary judgment, a Superior Court judge

granted summary judgment in favor of Kelly.[1]  The judge denied Stewart Title's subsequent motion for reconsideration.  We affirm.

Background.  We summarize the evidence in the light most favorable to Stewart Title, the party against whom the judge allowed summary judgment.  See Lambert v. Fleet Nat'l Bank, 449 Mass. 119, 120 (2007).

In 2001, Kelly, who was in the business of renovating homes, acquired title to the property.  In 2003, Kelly borrowed $322,500 from Chevy Chase Bank, F.S.B. (Chevy Chase) secured by a mortgage (first mortgage) to Mortgage Electronic Registration Systems (MERS), as nominee for Chevy Chase, on the property.  Attorney Roseann Conti conducted the closing.  The first mortgage was recorded with the Suffolk County registry of deeds, resulting in a first priority lien on the property.

In 2007, Kelly granted another mortgage (second mortgage) on the property.  As set forth supra, the second mortgage was to JPMorgan, securing a promissory note for the $382,500 loaned to Kelly by JPMorgan.[2]  JPMorgan retained Conti to conduct the

---

[1] Kelly moved for summary judgment on all claims; Stewart Title moved for summary judgment as to only its claim for breach of contract.

[2] Kelly did not use the proceeds from the loan secured by the second mortgage to pay off the first mortgage; and no provision of the second mortgage expressly required him to do

closing; however, despite knowledge of the first mortgage, Conti did not notify JPMorgan. The second mortgage also was recorded with the Suffolk County registry of deeds.

In connection with the second mortgage transaction, JPMorgan acquired a title insurance policy from Stewart Title. Conti acted as Stewart Title's agent. Again, Conti failed to provide notice of the first mortgage. Thereafter, Kelly continued to make payments on both the first and second mortgages.

In May 2012, JPMorgan filed a complaint in Land Court to reform the second mortgage on the basis that, as a result of a mutual mistake, Kelly's signature was not affixed to the second mortgage. Kelly received notice of the action, but did not respond or otherwise appear. In February 2013, a Land Court judge ordered a default judgment in favor of JPMorgan, reforming the second mortgage.[3]

Thereafter, JPMorgan learned of the first mortgage and, in December 2013, made a written demand to Kelly that he discharge

---

so. As set forth at note 4, infra, however, Kelly was required "promptly" to discharge any priority liens.

[3] The Land Court judgment also provided:

"[N]othing in this Judgment shall extend to . . . title and interest in the Property of any party holding a record interest in the Property who . . . has not been named as a party to this proceeding in this court . . . ."

it.  Specifically, JPMorgan invoked a provision of the second mortgage, allowing JPMorgan to identify a priority lien on the property and, upon notice to Kelly, to require him to discharge it within ten days.[4]  Kelly did not discharge the first mortgage.  In addition, Kelly stopped making monthly payments to JPMorgan; however, he continued to make payments on the loan secured by the first mortgage.  Eventually, faced with economic pressure, Kelly contacted the office of the Attorney General to assist him to restructure the first and second mortgages.

Relevant to the present dispute, the second mortgage provided that, if Kelly failed to discharge the first mortgage, JPMorgan could itself elect to discharge the priority lien and add the amount paid to Kelly's debt secured by the second mortgage.[5]  The second mortgage also provided that, upon request

---

[4] Section 4 of the second mortgage provided:

"[Kelly] shall promptly discharge any lien which has priority over this Security Instrument . . . .  If [JPMorgan] determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, [JPMorgan] may give [Kelly] a notice identifying the lien.  Within 10 days of the date on which that notice is given, [Kelly] shall satisfy the lien . . . ."

Section 4 contained other cure provisions; however, Kelly did not invoke them.

[5] Section 9 of the second mortgage provided:

"If (a) [Kelly] fails to perform the covenants and agreements contained in this Security Instrument . . . then

by JPMorgan, any amount so paid by JPMorgan "shall be payable." The record contains no such request.

Meanwhile, in December 2015, apparently in response to a claim by JPMorgan on the title insurance policy, Stewart Title had $268,084.83 paid to Chevy Chase's successor in interest to discharge the first mortgage held by MERS.[6]  Stewart Title did not inform Kelly (or the Attorney General) that it had taken this action.  In December 2016, following a negotiated restructuring by the Attorney General, Kelly entered into a new mortgage agreement (third mortgage) with a principal balance of $562,159.84[7] owed to JPMorgan.

---

[JPMorgan] may do and pay for whatever is reasonable or appropriate to protect [JPMorgan's] interest in the Property and rights under this Security Instrument . . . . [JPMorgan's] actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument . . . .  Any amounts disbursed by [JPMorgan] under this Section 9 shall become additional debt of [Kelly] secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from [JPMorgan] to [Kelly] requesting payment."

[6] The summary judgment record does not include evidence of payment by Stewart Title to either JPMorgan or Chevy Chase's successor in interest.  Instead, the record includes a check issued by JPMorgan and payable to Chevy Chase's successor in interest.  The check was sent with a cover letter apparently from Stewart Title.  Accordingly, the record is unclear, at best, as to whether Stewart Title paid to discharge the first mortgage.

[7] The record is devoid of an explanation for the increase in the amount of principal from the second mortgage to the third

Following discharge of the first mortgage, Stewart Title asserted an attorney malpractice claim against Conti, which Stewart Title elected to settle for $131,683.27 -- an amount less than the full amount paid to discharge the first mortgage. As set forth supra, Conti had failed to disclose the existence of the first mortgage; as a result, Stewart Title through its agent, Conti, failed to disclose the first mortgage to JPMorgan, JPMorgan did not learn of the first mortgage timely, and Stewart Title did not exclude the first mortgage from the policy coverage.[8]

Stewart Title filed the present action against Kelly, seeking the difference between the payment made to discharge the first mortgage and the sum recovered from Conti. Stewart Title claimed that it was entitled to damages against Kelly because (1) Kelly breached the second mortgage when he failed to discharge the first mortgage, and as JPMorgan's title insurer, Stewart Title had the right as subrogee to enforce the second

mortgage. It is not clear, for example, whether the amount increased due to JPMorgan adding the amount paid to discharge the first mortgage to Kelly's overall indebtedness pursuant to section 9 of the second mortgage. See notes 5-6, supra.

[8] "'[A] title insurance policy . . . is . . . an agreement to indemnify the policyholder . . . against loss through defects in title' . . . . Before issuing a policy, a title insurer searches real property records for title defects and, if any are discovered, excludes such known defects from the policy coverage." GMAC Mtge., LLC v. First Am. Title Ins. Co., 464 Mass. 733, 739 (2013), quoting B. Burke, Law of Title Insurance § 2.01[A], at 2-5 (3d ed. Supp. 2012).

mortgage against Kelly; and (2) Stewart Title's payment to discharge the first mortgage unjustly enriched Kelly.  Stewart Title and Kelly filed cross motions for summary judgment.  The judge allowed Kelly's motion and denied Stewart Title's motion.

Stewart Title filed a motion for reconsideration with an accompanying affidavit averring, for the first time, that the title insurance policy (on which Stewart Title exclusively had relied in its summary judgment papers in support of its position that it was JPMorgan's subrogee) was only a portion of a larger title insurance policy between Stewart Title and JPMorgan.  Specifically, Stewart Title averred that the title insurance policy that it had offered during the summary judgment stage was missing a "jacket," which included an express subrogation clause.  The judge denied the motion.

Discussion.  Our review of the judge's decision on summary judgment is de novo.  Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 231 (2015).  On appeal, we ask "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).  "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if

he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

1.  Breach of contract.  Stewart Title's claim for breach of contract rested on its allegation that Kelly breached the second mortgage when, in December 2013, he failed to discharge the first mortgage.  Because Stewart Title was not a party to the second mortgage, an essential element of its claim was proof of its status as JPMorgan's subrogee.

"Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover from two sources, one of which bears a primary legal responsibility.  If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor or loss victim, called the subrogor) against the third, primarily responsible party."  Frost v. Porter Leasing Corp., 386 Mass. 425, 426-427 (1982).  The doctrine applies, with certain limits, to policies of insurance such that, upon payment to the insured, "the insurer is entitled to share the benefit of any rights of recovery the insured may have against [the primarily responsible party] for the same loss covered."

_Id_. at 427. "An insurer's right of subrogation may be reserved in an [express] agreement between the insurer and the insured . . . or may arise by implication." _Id_.

a. _Express subrogation_. Stewart Title's breach of contract claim was based on its position that it was JPMorgan's subrogee through an express agreement in its title insurance policy with JPMorgan. Throughout the litigation, including in its complaint and in its summary judgment papers, Stewart Title exclusively relied on the title insurance document appended to its complaint in support of its subrogee status. The judge, examining this document, concluded that the policy did not have an express subrogation clause. On appeal, Stewart Title does not argue otherwise; indeed, our own review of the document confirms the judge's conclusion.

Instead, Stewart Title contends that the judge's reliance on its failure to come forward with an express subrogation clause was error because it was not aware that its status as subrogee was disputed. The record, however, reveals that Stewart Title's position is untenable. Throughout the litigation, Kelly's position was that he owed no contractual obligation to Stewart Title because it was not subrogated to JPMorgan's rights under the second mortgage as modified by the Land Court judgment.

In his answer, Kelly expressly denied Stewart Title's allegation that it was a subrogee to JPMorgan.[9]  The answer also sets forth Kelly's position that Stewart Title "has no standing to sue [Kelly] . . . because it was not a party to the contract or a party to the Land Court judgment."

Continuing to assert this defense in his motion for summary judgment, Kelly argued that Stewart Title could not enforce the second mortgage because "there was no contractual relationship between Stewart and Kelly," and it was not a party to the Land Court judgment reforming the second mortgage.  In other words, Kelly made plain that he disputed Stewart Title's position that it could enforce the second mortgage as subrogee of JPMorgan.[10]

Similarly, in his opposition to Stewart Title's cross motion for summary judgment, Kelly (again) disputed that Stewart Title was a subrogee with rights to enforce the second mortgage.

---

[9] Kelly's affirmative defenses included:  "[Stewart Title] does not have any signed agreement with [Kelly] allowing it to be first lien holder on the [property].  [Stewart Title] lacks any contractual relationship with [Kelly]" (emphasis added); and because Stewart Title was not a party to the Land Court judgment, "it is prohibited from using the terms of that judgment against [Kelly] or otherwise stepping into the shoes of a party to that judgment" (emphasis added).

[10] Kelly, who was pro se, also argued that Stewart Title's position was a "manipulation of how subrogation is applied" because it sought to elevate JPMorgan to the priority lien position even though Stewart Title had paid MERS, which would (Kelly argued) at best entitle Stewart Title to be subrogated to MERS, putting Stewart Title in the place of MERS -- in a senior lien position to its own client, JPMorgan.

Indeed, Kelly's entire defense to the breach of contract claim rested on the argument that Stewart Title had no standing to bring its claim because it was not a party to the second mortgage as reformed by the Land Court judgment. As but one example, Kelly's response to Stewart Title's "Statement of Material Facts" at the summary judgment stage stated:

> "Kelly disputes that he is obligated to pay [Stewart Title] any amounts due to its loss <u>under any contract or subrogation theory</u>. The Land Court judgment is enforceable only between Kelly and [JPMorgan] as they were the only parties to that court action. <u>[Stewart Title] cannot be a subrogee</u> to the Land Court judgment. <u>[Stewart Title] cannot enforce an unsigned contract it was not a party to</u>." (Emphasis added.)

In fact, Stewart Title acknowledged this as the "crux" of Kelly's argument[11] and responded by stating that it had standing to enforce the second mortgage as reformed by the Land Court judgment because it was the subrogee of JPMorgan.[12] Given this extensive history, Stewart Title's position that it was not aware of the dispute concerning its status as subrogee to

---

[11] Stewart Title asserts that Kelly disputed only the enforceability of the Land Court judgment by Stewart Title, as opposed to JPMorgan, based on the language of the Land Court judgment. See note 3, <u>supra</u>. Even this myopic reading of Kelly's position, however, required Stewart Title to show that it was subrogated to the rights of JPMorgan, the actual party in the Land Court judgment. Indeed, this was the "crux" of Kelly's argument and the "crux" of Stewart Title's response.

[12] The issue of Stewart Title's standing to enforce the second mortgage also arose at the hearing on the cross motions.

JPMorgan -- an essential element of its breach of contract claim -- has no basis.

To prove its breach of contract claim, Stewart Title was required to show that it had a contract with Kelly, or (as was its theory) that it was subrogated to JPMorgan's rights under the second mortgage. See George W. Wilcox, Inc. v. Shell E. Petroleum Prods., Inc., 283 Mass. 383, 388 (1933) (proof of enforceable contract required to recover for breach of contract); 13 S.H. Jenkins, Corbin on Contracts § 67.39(2), at 19 (J.M. Perillo ed., rev. ed. 2003) ("In an action for damages or other type of reparation for a breach of contract, the plaintiff must allege and prove the making of the contract and the fact of the breach"). See also General Exchange Ins. Corp. v. Driscoll, 315 Mass. 360, 364 (1944) (claim of subrogation rights under contract, rather than equitable principles, requires proof of express subrogation language). Stewart Title chose to rely exclusively on a document that contains no express subrogation clause to support its position (which Kelly throughout the litigation disputed) that it was JPMorgan's subrogee. Stewart Title maintains that it never contended that the document it submitted in support of its position that it was JPMorgan's subrogee was the entirety of the title insurance policy. As the party with the burden to establish a contractual right against Kelly, however, it was incumbent upon Stewart

Title to support its claim for subrogation.  It cannot, at the summary judgment stage, rely on mere allegations or documents that fail to support its position.  See Madsen v. Erwin, 395 Mass. 715, 719 (1985); Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974).

As set forth supra, Stewart Title filed a motion for reconsideration and an accompanying affidavit from its employee, attaching a "jacket" that contained an express subrogation provision; Stewart Title contends that the judge abused her discretion by denying its motion.  See Audubon Hill S. Condo. Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012) (denial of Mass. R. Civ. P. 60 [b], 365 Mass. 828 [1974], motion reviewed for abuse of discretion). Where a party moves for reconsideration based on newly submitted evidence, it must show that its failure to submit the evidence earlier was the result of a "mistake, inadvertence, surprise, or excusable neglect."  Cullen Enters., Inc. v. Massachusetts Property Ins. Underwriting Ass'n, 399 Mass. 886, 893-894 (1987), quoting Mass. R. Civ. P. 60 (b).  Given the disputed nature of Stewart Title's subrogation theory, the judge acted within her discretion in denying the motion.  See Tai v. Boston, 45 Mass. App. Ct. 220, 222-223 (1998) ("simple oversight" not excusable neglect).

b.  <u>Implied subrogation</u>.  In the alternative, Stewart Title contends that it is entitled to implied subrogation to pursue its contract claim because without it, JPMorgan (its insured) would receive a windfall because it "would have benefitted by removing the priority mortgage without having to pay for this to be done."[13]  While "[t]he reason for implied subrogation under contracts of insurance is to prevent an unwarranted windfall to the insured," it is not at all clear how allowing Stewart Title to pursue a claim against Kelly avoids a windfall to JPMorgan.  Frost, 386 Mass. at 428.

Moreover, unlike in cases allowing a title insurer to be subrogated to the rights of its insured-mortgagee against a mortgagor, Kelly is not primarily liable for JPMorgan's loss.[14]

_____

[13] Of course, JPMorgan paid Stewart Title (in the form of closing costs from Kelly) the premium for the title insurance policy to protect itself from the very risk Stewart Title eventually was called upon to cure.  "'Unlike other forms of insurance, title insurance is not directed at future risks.  It is directed at risks that are already in existence on the date the policy is issued.'  Because title insurance narrowly covers defects in, or encumbrances on, titles that are in existence when a policy issues, title insurers attempt to eliminate or reduce risks prior to the issuance of a title insurance policy. . . .  [T]itle insurance typically requires a single premium payment (often a percentage of the property value) for indefinite coverage . . . ."  GMAC Mtge., LLC v. First Am. Title Ins. Co., 464 Mass. 733, 740 (2013), quoting B. Burke, Law of Title Insurance § 2.01[C], at 2-22 (3d ed. Supp. 2008).

[14] In order to recover under implied subrogation, (1) the insured must have suffered an actual loss for which a third party is primarily liable; (2) the insurer must have compensated the insured for the same loss; and (3) the insurer must have

Kelly, for example, did not represent that the property was clear of all encumbrances. Contrast American Title Ins. Co. v. Coakley, 419 So. 2d 816, 816 (Fla. Dist. Ct. App. 1982) (permitting title insurer, which paid to clear priority Internal Revenue Service lien, to be subrogated to rights of its insured where third party failed to disclose lien on property despite covenant to do so); Transamerica Title Ins. Co. v. Johnson, 103 Wash. 2d 409, 417-418 (1985) (permitting title insurance company, which paid to clear sewer lien on property, to be subrogated pursuant to express clause in title insurance policy to buyer's rights where seller covenanted to provide property free and clear of all liens).

Here, Stewart Title bears the responsibility because it (through its agent, Conti) knew that the first mortgage encumbered the property and failed to disclose it to JPMorgan, thereby depriving JPMorgan of the opportunity to mandate that the encumbrance be cleared as a condition of the second mortgage. Stewart Title now wishes to be subrogated to the right of JPMorgan when, years after Stewart Title's negligence in failing to disclose the first mortgage to JPMorgan, Kelly breached a provision of the second mortgage, requiring him to

---

been obligated to make the payment as a duty to indemnify the insured in order to protect its own interest, rather than as a volunteer. See 16 L.R. Russ & T.F. Segalla, Couch on Insurance 3d § 223:1 (2005). See also Frost, 386 Mass. at 428-429.

clear the first mortgage within ten days' notice. Stewart Title does not cite to any case law where implied subrogation was allowed under such circumstances. Indeed, the few cases outside Massachusetts that address similar (albeit not identical) situations in the title insurance context hold otherwise. See, e.g., USLife Title Ins. Co. of Dallas v. Romero, 98 N.M. 699, 703 (1982) (negligence of title insurance company in failing to exclude known tax lien from coverage under its policy precluded subrogation when it paid lien pursuant to policy); Lawyers Title Ins. Corp. v. Edmar Constr. Co., 294 A.2d 865, 869 (D.C. 1972) (subrogation principles did not permit title insurer to recover from construction company amount it paid to discharge senior lienholder where it issued title insurance policy knowing of priority lien); Lawyers Title Ins. Corp. v. Capp, 174 Ind. App. 633, 637 (1977) (subrogation not available to title insurer to seek repayment of amount it paid under its policy in view of fact that insurer's negligence contributed to its failure to exclude defect in title from its policy).

Some jurisdictions have gone so far as to foreclose subrogation altogether in such circumstances. See Coy v. Raabe, 69 Wash. 2d 346, 351 (1966) ("it is difficult to think of a situation in which a title insurance company could not claim unjust enrichment as to someone who might inadvertently benefit by their negligence. Either they insure or they don't. It is

not the province of the court to relieve a title insurance company of its contractual obligation").  We need not go so far.  It is sufficient that on the record presented here, the equities do not favor Stewart Title.

Stewart Title's position regarding its rights as JPMorgan's subrogee is fatally flawed for an additional reason.  When Kelly breached the provision of the second mortgage requiring him to pay to discharge the first mortgage, JPMorgan's remedy was itself to elect to discharge the first mortgage.  If it elected to do so, JPMorgan would be entitled, under the second mortgage, to add the discharge payment as "additional debt" to the second mortgage.  This additional indebtedness would bear interest as set forth in the note secured by the second mortgage.

The second mortgage further allowed JPMorgan to request payment of the additional indebtedness.  The record, however, is devoid of any such request.  Thus, nothing in the second mortgage permits Stewart Title to the lump sum payment it now seeks.[15]  See Frost, 386 Mass. at 427 ("If the secondary source [the subrogee] pays the obligation, it succeeds to the rights of the party it has paid [the creditor or loss victim, called the subrogor] against the third, primarily responsible party").

---

[15] Neither party addresses the impact of the third mortgage on the foregoing.

2.  Unjust enrichment.  Stewart Title contends that there is a material dispute of fact as to whether Kelly reasonably should have expected it to pay to discharge the first mortgage and thus that summary judgment should not have entered as to that claim.  In order to recover for unjust enrichment, a plaintiff must prove that (1) it conferred a measurable benefit upon the defendant; (2) it reasonably expected compensation from the defendant; and (3) the defendant accepted the benefit with the knowledge, actual or chargeable, of the plaintiff's reasonable expectation.  See Finard & Co. v. Sitt Asset Mgt., 79 Mass. App. Ct. 226, 229 (2011).  Here, Stewart Title's claim falters on at least the third element.  It is undisputed that Kelly's first notice that Stewart Title paid to discharge the first mortgage came when Stewart Title filed the present action.  There is no evidence that Kelly had actual or constructive knowledge of Stewart Title's intent or plan to discharge the first mortgage, or Stewart Title's expectation to be compensated by Kelly for its action.  At best, the record shows that Kelly should have known that, following his inability to pay to discharge the first mortgage, JPMorgan could elect to discharge it and add the amount to Kelly's overall indebtedness at the agreed upon interest rate.  In light of the foregoing, summary judgment was proper.[16]

---

[16] Stewart Title's request for appellate attorney's fees and

Judgment affirmed.

Order denying motion for
  reconsideration affirmed.

---

costs is denied.