**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN

CENTURION PROPERTIES III, LLC; SMI GROUP XIV, LLC,

Plaintiffs-Appellants,

v.

CHICAGO TITLE INSURANCE COMPANY, a Nebraska company,

Defendant-Appellee.

No. 91932-1

En Banc

Filed JUL 14 2016

WIGGINS, J.—The United States Court of Appeals for the Ninth Circuit certified the following question to this court: "Does a title company owe a duty of care to third parties in the recording of legal instruments?" We answer the certified question no and hold that title companies do not owe a duty of care to third parties in the recording of legal instruments. Such a duty is contrary to Washington's policy and precedent, and other duty of care considerations.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## FACTS

This certified question arises from a civil action for money damages filed in the United States District Court for the Eastern District of Washington. Plaintiffs Centurion Properties III LLC (CP III) and SMI Group XIV LLC (collectively Plaintiffs) assert that defendant Chicago Title Insurance Company negligently breached its duty of care and caused damages when it recorded unauthorized liens on CP III's property.

Michael Henry, the sole member of SMI, joined with Thomas Hazelrigg to form CP III. They formed CP III in order to purchase property and commercial buildings in Richland, Washington. They further agreed that 90 percent of CP III would be owned by individuals and entities controlled by Hazelrigg and 10 percent would be owned by SMI. Aaron Hazelrigg, through nonparty Centurion Management III LLC, was the managing member of CP III.

To purchase the property, CP III obtained a $70.8 million loan from General Electric Capital Corporation (GECC). The loan was secured by a deed of trust on the property naming GECC as the beneficiary. The deed of trust and two other instruments—the CP III operating agreement and the GECC loan agreement—prohibited the placement of any liens or encumbrances on the property without GECC's approval. Any unauthorized lien or encumbrance would constitute an event of default.

Defendant Chicago Title served as escrow agent, closing agent, and title insurer for the purchase of the property at issue. Chicago Title recorded the GECC deed of trust and is named trustee for GECC's senior lien. Chicago Title, as trustee,

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

also received and reviewed copies of the CP III operating agreement and the GECC loan agreement as part of the transaction.

Following the sale, four liens were placed on the property without GECC's approval. The four unauthorized liens were recorded by Chicago Title: two separate deeds of trust granted by CP III in favor of Centrum Financial Services Inc.; a deed of trust granted by CP III to Trident Investments Inc.; and a memorandum of agreement between CP III and Trident. Two additional liens are not at issue in this case.

Each of these liens was a facially valid instrument: the instruments bore the correct legal description, and they were all signed and notarized through Centurion Management by either Aaron Hazelrigg or Thomas Hazelrigg as director of CP Management on behalf of CP III.[1] Chicago Title initially recorded Centrum Financial's deed of trust in conjunction with issuing a commitment for title insurance. The remaining three recordings were done as accommodations.

Later, GECC obtained a title report and learned of the four (prohibited) liens that Chicago Title recorded. GECC notified CP III that the junior liens were events of default and accelerated the entire unpaid balance of the loan, imposing a default rate of interest. Though CP III attempted to refinance the loan, no lender would refinance it while the prohibited liens remained on CP III's title. GECC moved forward with its foreclosure, forcing CP III to file for bankruptcy.[2]

---

[1] Plaintiffs allege that even though these liens were purportedly entered into by Centurion Management on behalf of CP III, they were not authorized liens. They further assert that Chicago Title was under a duty to look behind the instruments to determine whether the signatures were, in fact, valid.

[2] During this time, Henry, as the sole member of SMI, took control of CP III from the Hazelriggs. He is now the sole owner of both companies.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Plaintiffs filed a civil action against the Hazelriggs, Centrum Financial, and others, alleging that the named defendants misappropriated funds from CP III, improperly transferred ownership of CP III, and secretly placed liens on CP III's property. These claims sought to (1) enjoin foreclosure of the allegedly unauthorized liens and (2) quiet title by voiding the instruments that created them. Plaintiffs later added a sole complaint against Chicago Title; this complaint asserted that Chicago Title was negligent in recording the prohibited liens and that the resulting defaults caused CP III to incur more than $7.5 million in damages, including $3 million in default interest. The claims against all other parties settled, leaving only the negligence claim against Chicago Title. The district court dismissed this claim on summary judgment, finding that Chicago Title did not owe Plaintiffs a duty of care. *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, No. CV-12-5130-RMP, 2013 WL 3350836 (E.D. Wash. July 3, 2013) (court order). Plaintiffs appealed, and the Ninth Circuit certified its question to this court. *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 793 F.3d 1087 (9th Cir. 2015). We accepted review pursuant to RCW 2.60.020.

ANALYSIS

We are asked whether a title insurance company owes a duty of care to third parties in the recording of legal instruments. A duty of care is "'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Affil. FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 449, 243 P.3d 521 (2010) (internal quotation marks omitted) (quoting *Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 413, 693 P.2d 697 (1985). The duty of care question implicates three main issues—the existence of a duty, the measure of that

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

duty, and the scope of that duty. *Id.* (quoting DAN B. DOBBS, THE LAW OF TORTS § 226, at 578 (2000)). "In a negligence action, in determining whether a duty is owed to the plaintiff, a court must not only decide who owes the duty, but also to whom the duty is owed, and what is the nature of the duty owed." *Keller v. City of Spokane*, 146 Wn.2d 237, 243, 44 P.3d 845 (2002). The existence of a duty and the scope of that duty are questions of law, and both are determined by considering the factors listed below.

We consider logic, common sense, justice, policy, and precedent, as applied to the facts of the case, when determining whether a defendant owes a duty in tort. *Affil. FM Ins. Co.*, 170 Wn.2d at 449. We have long applied these factors when defining "duty," and they can be traced back for more than 100 years.[3] We apply these factors here. We first examine precedent and analyze whether our decisions or the decisions of neighboring jurisdictions support finding a duty here. We next consider whether Washington's policy of protecting the rights of property owners through the title recording system is advanced or frustrated by imposing a legal duty of care. Finally, we consider logic, common sense, and justice. These considerations lead us to conclude that a title insurance company does not owe a duty of care to third parties in the recording of legal instruments.

I. Standard of review

Certified questions from a federal court are questions of law that we review de novo. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 337, 334 P.3d 14 (2014). We consider

---

[3] The original language from 1 *Thomas Atkins Street, The Foundations of Legal Liability* 100, 110 (1906) is quoted time and again from *Affiliated FM Insurance Co.*, 170 Wn.2d at 449, to *Snyder v. Medical Service Corp. of Eastern Washington*, 145 Wn.2d 233, 243, 35 P.3d 1158 (2001), to *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985), to *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974).

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the legal issues not in the abstract but rather based on the certified record provided by the federal court. *Id.* (citing RCW 2.60.030(2)). Our ruling is not advisory—pursuant to RCW 2.60.020, our ruling in answer to the certified question resolves actual issues pending in the federal proceeding and will be legal precedent in all future controversies involving the same legal question. *Id.*

## II.   Precedent

We first consider precedent. Whether a title insurance company owes a duty of care to third parties in the recording of legal instruments is a question of first impression for this court. However, our precedent firmly supports the conclusion that the answer to this certified question is no.

Our analysis begins by considering the duties owed by title insurance companies in prior cases. We next consider other circumstances that have led us to recognize a professional duty of care. Washington law treats professional duties as discrete duties owed to clients—absent a special relationship, we have extended a professional duty of care to third parties only (1) when the third party is an intended beneficiary, (2) when the third party justifiably relied on a professional's representations under a theory of negligent misrepresentation, or (3) when a professional is best able to mitigate the risk of a physical injury. *See, e.g., Stewart Title Guar. Co. v. Sterling Sav. Bank*, 178 Wn.2d 561, 567, 311 P.3d 1 (2013) (no duty to nonclient absent intent to benefit nonclient); *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 832, 959 P.2d 651 (1998) (negligent misrepresentation); *Affil. FM Ins. Co.*, 170 Wn.2d at 545 (engineer owed a duty of care to third parties who may be harmed by engineer's negligence). Because Plaintiffs do not assert a theory of

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

negligent misrepresentation, our analysis considers our rule limiting duties to third parties who are intended beneficiaries and the rationale extending a duty to professionals able to mitigate the risk of physical injury. We conclude by considering the approaches of Arizona and California, the only other states to consider the duty owed by a title insurance company to a third party when recording legal instruments.

### A. Title insurance companies do not owe a general duty to clients to search for and disclose potential title defects when issuing preliminary commitments

Title insurance companies may perform several services for their own benefit or for their client's benefit. Consistent with chapter 48.29 RCW ("Title Insurers"), our analysis of the duty owed by title insurance companies to their clients follows the nature of the service at issue.

Though we have not considered the duty owed by a title insurance company to nonclient third parties, we thoroughly analyzed and explored the duty of a title insurer to its clients—namely to its insureds—in *Barstad v. Stewart Title Guaranty Co.*, 145 Wn.2d 528, 541, 39 P.3d 984 (2002). We specifically considered a title insurance company's duty to search for and/or to disclose title defects to its clients when issuing a preliminary commitment. We held that title insurance companies do not owe their clients a duty to search for and/or to disclose title defects when preparing a "preliminary title commitment" pursuant to the plain language of RCW 48.29.010(3)(c). *Id.* at 530. To reach this conclusion, we considered the meaning of chapter 48.29 RCW, the legislative purpose of that statutory scheme, and standard industry practice, and we conducted a comparative analysis of other states in the Ninth Circuit. *Id.* at 535-42.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

*Barstad* considered the general duties imposed on title insurance companies by chapter 48.29 RCW. *Id.* at 535. There, the insureds asserted that title insurers owe a duty of care when preparing abstracts of title and argued that a preliminary title commitment serves the same purpose as an abstract of title, giving rise to the same duty of care. *Id.* We rejected this argument. *Id.*

We began by examining the definitions of the services performed—and resultant duties owed—by title insurers. *Id.* We observed that an abstract of title is

"a written representation, provided pursuant to contract, whether written or oral, intended to be relied upon by the person who has contracted for the receipt of such representation, listing all recorded conveyances, instruments, or documents which, under the laws of the state of Washington, impart constructive notice with respect to the chain of title to the real property described. An abstract of title is not a title policy as defined in this subsection."

*Id.* at 535 n.8 (quoting former RCW 48.29.010(3)(b) (1997)[4]). Due to the contractual and reliance principles associated with an abstract, we noted that we have long recognized the potential duties associated with an abstract of title. *Id.* at 539 n.14.

We contrasted this service with the statutory definition of a "preliminary commitment" at RCW 48.29.010(3)(c):

"'Preliminary report,' 'commitment,' or 'binder' means reports furnished in connection with an application for title insurance and are offers to issue a title policy subject to the stated exceptions in the reports, the conditions and stipulations of the report and the issued policy, and such other matters as may be incorporated by reference. The reports are not abstracts of title, nor are any of the rights, duties, or responsibilities applicable to the preparation and issuance of an abstract of title applicable to the issuance of any report. Any such report shall not be construed as, nor constitute, a representation as to the condition of the title to real property, but shall constitute a statement of terms and

---

[4] Minor wording changes were made in 2005 but do not alter the meaning. LAWS OF 2005, ch. 223, § 14.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

conditions upon which the issuer is willing to issue its title policy, if such offer is accepted."

*Id.* at 535 n.8 (quoting former RCW 48.29.010(3)(c)[5]). We observed that a preliminary commitment is "merely an offer to issue the title insurance subject to the stated conditions." *Id.* at 536 (citing former RCW 48.29.010(3)(c)). This research is performed specifically for the title insurance company's benefit and not for the benefit of the insured. *Id.* at 540.

We also considered industry practice, legislative intent, and the approach of other jurisdictions, as well as the insured's argument that title insurance companies owe a fiduciary duty to disclose title defects. *Id.* at 542-44. Every one of these considerations led to the conclusion that title insurance companies have no general duty to disclose potential or known title defects when they are not preparing an abstract of title because these services are not prepared for or intended to be relied on by a person other than the insurer. *Id.* at 530.

Our holding in *Barstad* follows a long line of cases in which we have rejected attempts to impose a duty on title insurance companies to search for and disclose title defects. *See, e.g., Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 413-14, 693 P.2d 697 (1985) (no reliance by third party on title insurer's preliminary commitment); *Klickman v. Title Guar. Co. of Lewis County*, 105 Wn.2d 526, 528, 716 P.2d 840 (1986) (no liability because no title defect); *Lombardo v. Pierson*, 121 Wn.2d

---

[5] Minor wording changes were made in 2005, including the following changes to the final sentence of subsection (3)(c): "~~Any such~~ The report ~~shall not be construed as, nor constitute,~~ is not a representation as to the condition of the title to real property, but ~~shall constitute~~ is a statement of terms and conditions upon which the issuer is willing to issue ~~a~~ its title policy, if ~~such~~ the offer is accepted." LAWS OF 2005, ch. 223, § 14. The changes do not affect our analysis.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

577, 581-83, 852 P.2d 308 (1993) (same). These cases strongly suggest that title insurers do not owe a duty of care to third parties when merely recording legal instruments.

Title companies may record documents with the county recorder's office in conjunction with the issuance of a title commitment or policy, or as a separate accommodation recording at the request of the customer. Here, Chicago Title recorded Centrum Financial's deed of trust in conjunction with issuing a commitment for title insurance and later completed three such accommodation recordings. No party requested an abstract of title, and none of these recordings was done at the request of Plaintiffs.

Chicago Title did not have a duty to identify or disclose title defects to its client, Centrum Financial, in preparing a commitment for title insurance; such a duty is owed only in preparing an abstract of title. *Accord Barstad*, 145 Wn.2d at 536; former RCW 48.29.010(3)(b), (3)(c). Further, Washington's title insurance and recording statutes do not impose liability for the negligent recording of titles. *See generally* ch. 48.29 RCW; ch. 65.08 RCW. Because our title insurer liability precedent does not support finding a duty to identify and disclose title defects to its own clients, it cannot support extending this duty of care to nonclient third parties when recording a legal instrument, particularly when that legal instrument is facially valid, as it is here.[6]

---

[6] Plaintiffs cite *Hu Hyun Kim v. Lee* for the proposition that title companies owe a duty of reasonable care when fulfilling professional when fulfilling professional obligations and giving professional advice to their clients. 145 Wn.2d 79, 91, 31 P.3d 665 (2001) (title company negligent in rendering an expert opinion when it failed to discover and disclose an existing, recorded, and perfected lien on the client's property). We are unpersuaded by *Kim* on these facts in view of our decision two years later in *Barstad*, 145 Wn.2d 528, where we held that title insurance companies do not have a duty of care when preparing commitment reports

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

B. *Our other title insurance company cases do not inform our analysis of this issue*

Plaintiffs' citations to other cases holding that title insurance companies owe duties in tort are not well taken.

Plaintiffs cite *Denaxas v. Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 663, 63 P.3d 125 (2003) for the proposition that title insurance companies have a duty to exercise reasonable care in carrying out their instructions. However, *Denaxas* actually held that "the Title Company did not have a duty to point out the discrepancy between the legal description in the Agreement and that in the closing documents." *Id.* To the extent *Denaxas* discussed a duty to follow instructions, we held that an "'escrow agent's duties and limitations are defined . . . by his instructions.'" *Id.* (alteration in original) (quoting *Nat'l Bank of Wash. v. Equity Investors*, 81 Wn.2d 886, 910, 506 P.2d 20 (1973)). This point arises strictly out of the specific characteristics governing escrow holders—characteristics that are undisputedly not at issue in this case as Chicago Title did not perform any escrow services. *See Nat'l Bank of Wash.*, 81 Wn.2d at 910.

Plaintiffs also rely on *Walker v. Transamerica Title Insurance Co.*, 65 Wn. App. 399, 828 P.2d 621 (1992). But *Walker* addresses only proximate cause; the court did not address duty because Transamerica Title conceded duty for the purpose of its summary judgment motion. *Id.* at 402. Further, *Walker* involved the recording of a

---

under RCW 48.29.010. *Kim* addresses neither chapter 48.29 RCW nor liability in regard to commitments. Furthermore, there being no contract here between Chicago Title and CP III, *Kim* cannot inform our analysis of the certified question before us.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

facially invalid lien that did not contain a description of the property at issue. *Id.* at 401. *Walker* does not inform our duty analysis.

### C. Absent a substantial risk to public safety or property damage, professionals do not owe a duty to third parties when the transaction at issue is not intended to benefit the third party

The duty of a title insurance company to third parties is a question of first impression to this court. Therefore, we turn to analogous considerations of a professional's duty to third-party nonclients for guidance. Using a modified version of California's multifactor test,[7] we recently considered whether attorneys owe nonclient third parties a duty of care in *Sterling Savings Bank*, 178 Wn.2d 561. Because our multifactor test is derived from the California test applied in *Seeley v. Seymour*, 190 Cal. App. 3d 844, 237 Cal. Rptr. 282 (1987) (*see infra* Section II.D) and because the issue of a lawyer's duty to a nonclient is similar to the duty of a title insurer to a nonclient, our analysis in *Sterling* is instructive to our analysis here.

In *Sterling*, we applied a multifactor test designed to determine when an attorney may be liable for malpractice to a nonclient third party. These factors are:

"1.    The extent to which the transaction was intended to benefit the plaintiff [that is, the third party suing the attorney];

"2.    The foreseeability of harm to the plaintiff;

"3.    The degree of certainty that the plaintiff suffered injury;

"4.    The closeness of the connection between the defendant's . . . conduct and the injury;

---

[7] We first adopted the multifactor test in *Trask v. Butler*, 123 Wn.2d 835, 872 P.2d 1080 (1993). In *Trask*, we considered California's multifactor test and the Illinois "third party beneficiary" test in deciding whether an attorney owes a duty to a nonclient. *Id.* at 840. After discussing both tests, the court combined the two and created Washington's modified multifactor test. *Id.* at 841-43.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

"5.     The policy of preventing future harm; and

"6.     The extent to which the profession would be unduly burdened by a finding of liability."

178 Wn.2d at 565-66 (first alteration in original) (quoting *Trask v. Butler*, 123 Wn.2d 835, 843, 872 P.2d 1080 (1994)). Quoting *Trask*, we explained that the first factor is the "'primary inquiry'" in determining liability to third parties. *Id.* (quoting *Trask*, 123 Wn.2d at 842). We further explained that "'under the modified multifactor balancing test, the threshold question is whether the plaintiff is an intended beneficiary of the transaction to which the advice pertained'" and held that "'no further inquiry need be made unless such an intent exists.'" *Id.* (quoting *Trask*, 123 Wn.2d at 843). Ultimately, we found no duty because the transaction at issue was not intended to benefit the third party. *Id.* at 570.

These factors do not support finding a duty in this case. Neither Chicago Title's preliminary commitment and recording nor its subsequent accommodation recordings for the benefit of its client, Centrum Financial, were intended to benefit CP III. Indeed, the opposite is true—any recording of Centrum Financial's interest in the property would burden CP III. Under the multifactor test, this threshold inquiry is dispositive of Plaintiffs' claim.

Plaintiffs do not argue that the transaction between Centrum Financial and Chicago Title was intended to benefit them. Instead, they seem to assert two separate arguments in support of liability. First, they argue that Chicago Title assumed a duty of care arising out of the foreseeability of the injury to CP III when it agreed to issue a commitment to Centrum Financial and to record its instruments. Second, they assert

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

that Washington law recognizes tort duties by title insurance companies. Our precedent requires rejection of both arguments.

Plaintiffs' first argument is that liability to CP III arises out of Centrum Financial's instruction to Chicago Title. From this instruction, Plaintiffs argue that Chicago Title owed them a duty of care "given the obvious and known risks to the landowner." Pls.' Reply Br. at 7. This assertion assumes that a duty to CP III could be inferred from the contractual agreement between Centrum Financial and Chicago Title, an argument we reject. *See infra* Section IV.a. This argument for a duty also appears to be entirely predicated on the foreseeability of the harm. However, foreseeability of harm is only one of six factors necessary to determine whether a duty exists. *Sterling*, 178 Wn.2d at 566. Further, we do not consider the foreseeability of harm when a transaction is not intended to benefit the third-party plaintiff. *Id.* Thus, foreseeability of harm, alone, is insufficient to support imposing a duty.

Plaintiffs also assert that title insurance companies are professional institutions charged with the public trust; therefore, they owe a duty of reasonable care to third parties in the exercise of their professional responsibilities. Recognizing that title insurance companies may owe a duty of reasonable care to their clients in certain scenarios not before us today, we hold that the duty considerations do not support extending the duties owed by title insurance companies to encompass liability to third parties in the recording of legal instruments.

Plaintiffs rely heavily on a recent decision establishing a professional duty of care toward third parties under a theory of general negligence. *See Affil. FM Ins. Co.*, 170 Wn.2d at 453-54. Plaintiffs read *Affiliated FM Insurance Co.* too broadly: the policy

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

considerations, precedent, logic, justice, and common sense underlying that decision are not present here.

In *Affiliated FM Insurance Co.*, we considered a certified question from the Ninth Circuit. The question asked whether a party who has a contractual right to operate commercially and extensively on property owned by a nonparty may sue an engineering consulting firm in tort for damage to that property when the party and the engineers are not in privity of contract. *Id.* at 447. The dispute arose from a fire aboard a train on Seattle's monorail system. *Id.* at 445. Though the city of Seattle owned the property that was physically damaged by the fire, Seattle Monorail Service operated the monorail and suffered significant economic damages as a result of the fire. *Id.* Seattle Monorail Services argued that the fire was the result of an engineer's negligent design and sued, arguing that the engineers were under a duty to Seattle Monorail Services to exercise reasonable care, despite the lack of contractual privity. *Id.* at 446.

We found that a duty existed. *Id.* at 453-54. In doing so, we balanced the risk to the physical safety of persons and property arising out of an engineer's work against the usefulness of private ordering (e.g., preference for contractual remedies) and against the economic burden a duty would place on engineers. *See id.* at 451-54. These policy considerations supported the court's analysis that a duty exists where "the interest in safety is significant" and the engineers occupy a position of control such that their training, education, and experience place them in the best position to prevent harms caused by their work. *Id.* at 453. We also considered precedent, both here and nationally, finding that the "engineers' common law duty of care has long been acknowledged in Washington. *Id.* at 454.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

These considerations do not weigh in favor of a duty here. There is no significant interest in public safety at issue and no concerns for physical safety. We therefore reject Plaintiffs' attempts to borrow our professional duty analysis from inapposite contexts.

### D. *Other jurisdictions do not provide persuasive authority on this issue*

As the Ninth Circuit recognized in its certification order, only two cases have considered whether title insurance companies owe a duty of care to third parties: the Arizona Court of Appeals in *Luce v. State Title Agency, Inc.*, 190 Ariz. 500, 950 P.2d 159 (1997) and the California Court of Appeals in *Seeley*, 190 Cal. App. 3d 844 (1987). These decisions reach opposite conclusions, in part because the decisions are based on different legal theories and different facts. Due to the difference in legal theories and facts, these cases provide limited persuasive reasoning for our consideration in this case.

On facts nearly identical to this case, the Arizona Court of Appeals considered whether a title agency owed a professional duty of care to protect a third party from foreseeable harm when it gratuitously recorded a deed of trust on behalf of a lender. *See Luce*, 190 Ariz. at 502. In *Luce*, a general partner signed a deed of trust to a lender without the approval of his limited partners, despite the fact that the partnership agreement required him to have their approval. *Id.* at 501. The lender asked State Title Agency to insure the policy and to record the deed of trust. *Id.* State Title issued a preliminary title report, provided a lender's policy of title insurance, and gratuitously recorded the deed. *Id.* State Title acknowledged that it read the partnership agreement

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

during this process, and the court inferred that State Title had actual knowledge of the agreement's limitations on the general partner's authority. *Id.*

The limited partners sued, asserting that State Title owed a duty based on either its review of the partnership agreement or its gratuitous recording of the deed of trust. *Id.* at 501-02. The trial court granted summary judgment in favor of State Title, *id.* at 501, and the Court of Appeals affirmed. *Id.* at 504. The Court of Appeals first held that there was no professional duty arising out of the foreseeable harm because State Title had no contractual relationship with anyone, no special relationship (or indeed, any relationship at all) with the injured plaintiff, and no ability to control the behavior of the general partner. *Id.* at 502-03.[8]

The facts presented to the Arizona Court of Appeals are virtually identical to those in the case before us and reinforce our conclusion here. Further, as discussed *supra* Section II.c of this opinion, Washington recognizes that foreseeability of harm is one of six factors the court considers in deciding whether a duty is owed to a nonclient. Though Arizona applied a different legal analysis and did not explicitly consider the intent to benefit, the application of the "intent to benefit" factor would have resulted in the same conclusion. Their conclusion that no duty exists on analogous facts supports our decision here.

In *Seeley*, the California Court of Appeals reached the opposite conclusion on significantly different facts. *See* 190 Cal. App. 3d 844. In *Seeley*, a buyer attempted

---

[8] The Arizona Court of Appeals also considered whether State Title owed a duty of care under *Restatement (Second) of Torts* § 324A (Am. Law Inst. 1965) and concluded that the section was inapplicable.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

to buy property owned by Seeley. *Id.* at 850. Seeley was not interested in selling but indicated that he would consider a long term lease of the property. *Id.* at 851. The parties negotiated the terms of the lease at length but did not come to an agreement. *Id.*

Following further negotiations, the buyer unilaterally prepared a "'Memorandum of Agreement'" that set forth the terms of a 60-year lease between himself and Seeley. *Id.* The buyer signed the agreement and had his signature notarized; he never presented the agreement to Seeley. *Id.* Instead, the buyer took the agreement to a title insurance company. *Id.* The buyer was a regular customer of the title insurance company, which agreed to file the unsigned agreement for recording. *Id.* The title insurance company filed the agreement in a stack of documents insured by their company, and the recorder recorded the invalid, unsigned encumbrance on Seeley's property. *Id.* Seeley knew nothing of this agreement. *Id.*

The encumbrance affected Seeley's ability to sell his title. *Id.* at 852. He then sued the county recording office for negligent recording; he later amended his complaint and sued the title insurance company for negligence. *Id.*

The California Court of Appeals considered whether a title insurance company, not acting as escrow, may be held liable "for the negligent recordation of a nonrecordable document." *Id.* at 860. In holding that the title company here was liable, the court considered six factors:

> "(1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

blame attached to the defendant's conduct; and (6) the policy of preventing future harm."

*Id.* at 861 (quoting *Earp v. Nobmann*, 122 Cal. App. 3d 270, 290, 175 Cal. Rptr. 767 (1981)). As discussed earlier, these factors are comparable to Washington's multifactor test in *Sterling* and support our adoption of that test here. *Compare Seeley*, 190 Cal. App. 3d at 861, *with Sterling,* 178 Wn.2d at 566.

But there are critical differences between *Seeley* and this case that limit its persuasive value here. *Seeley* first considered whether the transaction was intended to affect a third-party plaintiff. 190 Cal. App.3d at 861. The transaction was intended to undermine Seeley's interest in the property. *Id.* at 861. Conversely, the recordation in the instant case was intended to secure Centrum Financial's procured lien; there was no intent to benefit or harm CP III.[9]

Further, the instrument at issue in *Seeley* was facially invalid.[10] Thus—unlike our case—the title insurance company in *Seeley* did not have to review any other documents to know that the document was not recordable. The title insurer in *Seeley* also submitted the facially invalid instrument to a special "'stopped clock'" station. *Id.* at 861 n.7. The county recorder automatically recorded all instruments dropped at that station pursuant to a contract with the title insurer that required the title insurer to review all documents for recording compliance prior to filing; the title insurer in *Seeley* violated its contract with the recording office by submitting the invalid instrument with other, compliant instruments at this station. *Id.*

---

[9] In Washington, the factor to be considered is whether the transaction was intended to *benefit* the third party. *Sterling*, 178 Wn.2d at 566 (emphasis added).

[10] The Arizona Court of Appeals also distinguished the case on this ground. *Luce*, 190 Ariz. at 503 (citing *Seeley*, 190 Cal. App. 3d at 861).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

These facts played a significant role in the *Seeley* court's evaluation of factors two, four, five, and six. *Id.* at 861. The court held that these facts made the harm foreseeable and that the title insurance company's actions gave the invalid instrument a presumption of validity—establishing both a close connection between the act and the harm, and rendering the title insurer's conduct worthy of moral blame. *Id.* at 861-62. The title insurance company's violation of the recording statutes as well as its contract with the county recording office also presented a danger to title stability in the future, satisfying California's sixth factor. *Id.* at 862.

These considerations are not present here, where a title insurer presented facially valid instruments to a county recording office. We discuss the arguments against burdening title insurance companies to look behind facially valid instruments before recording throughout this memorandum; in sum, placing this burden on title insurance companies frustrates Washington's strong public policy of protecting property owners through the recording process. These factual differences are substantial; *Seeley*'s facts and conclusions are inapposite.[11]

In sum, our precedent supports our conclusion that title insurance companies have a duty of care in only limited situations outside of a contractual relationship and no duty to third parties in the recording of legal instruments. Plaintiff's argument that a duty is created merely because the harm is foreseeable is inconsistent with our

---

[11] We recognize the slight variations between the *Seeley* factors and the *Sterling* factors. *Compare Seeley*, 190 Cal. App.3d at 861, *with Sterling*, 178 Wn.2d at 566. Due to the significant factual differences, we do not address the differences in the factors. We also note that the *Seeley* court expressly denied that it was recognizing a "tort of 'negligent slander of title'" or that liability arose "solely from the recordation of the document." 190 Cal. App. 3d at 862 n.8.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

jurisprudence; their remaining citations to our case law and to other jurisdictional approaches are not instructive to our analysis. Our review of our precedent suggests that the answer to the certified question is no.

III. Public policy does not support extending a duty on title companies recording legal instruments to search for and disclose potential title defects

We next consider public policy. "The concept of duty is a reflection of all those considerations of public policy which lead the law to conclude that a 'plaintiff's interests are entitled to legal protection.'" *Taylor v. Stevens County*, 111 Wn.2d 159, 168, 759 P.2d 447 (1988) (quoting W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 357 (5th ed. 1984)). We balance the interests at stake to determine whether a title insurance company owes a duty to search for and disclose potential title defects when recording legal instruments. *Accord Affil. FM Ins. Co.*, 170 Wn.2d at 450.

Plaintiffs encourage us to find a duty, arguing that the Washington state courts and legislature have long recognized the important public policy of protecting the rights of property owners. We agree that this is an important policy of this State, but Plaintiffs are incorrect to suggest that extending a duty of care to title insurance companies would further this public policy. Washington has a comprehensive title insurance scheme, *see generally* ch. 48.29 RCW, and extensive recording requirements, *see generally* ch. 65.08 RCW. The purpose of the recording acts is to ensure stability and certainty of title to real property. *See Ellingsen v. Franklin County*, 117 Wn.2d 24, 28-29, 810 P.2d 910 (1991). These recording requirements further this purpose by holding recorded interests superior to unrecorded interests. *See RCW*

21

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

65.08.070. Thus, these statutory schemes further Washington's policy of protecting property rights by encouraging parties to record their interests.

We evaluate whether finding a duty of care from title insurance companies to third parties in the recording of legal instruments fulfills or frustrates these public policies. Washington's statutory schemes do not contemplate liability to third parties for the negligent recording of titles. *See generally* ch. 65.08 RCW. In lieu of a statutory remedy, Washington protects the valid interests of property owners from improper recording through the torts of slander of title and tortious interference with a contract.[12] *Rorvig v. Douglas*, 123 Wn.2d 854, 873 P.2d 492 (1994) (slander of title); *Calbom v. Knudtzon*, 65 Wn.2d 157, 396 P.2d 148 (1964) (tortious interference). These torts, discussed below, are not within the scope of this opinion.[13]

"Slander of title is defined as: (1) false words; (2) maliciously published; (3) with reference to some pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in plaintiff's pecuniary loss." *Rorvig*, 123 Wn.2d at 859. Tortious interference with a contract requires (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Calbom*, 65 Wn.2d at 162-63.

---

[12] Washington residents may also secure their property rights through equitable actions to quiet title. *See, e.g., Kobza v. Tripp*, 105 Wn. App. 90, 93, 18 P.3d 621 (2001).

[13] CP III does not argue that its proposed duty arises out of a special relationship, such as a fiduciary duty, between itself and Chicago Title. Nor do they argue that Chicago Title acted maliciously or in bad faith. Plaintiffs assert only that Chicago Title owes them a duty under general negligence principles. In rejecting Plaintiffs' argument, our decision does not suggest that title insurance companies are not liable for their intentional torts.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Neither of these torts is satisfied by simple negligence. Tortious interference with a contract requires intentional conduct, and slander of title requires malicious conduct. The reason for this rule is clear: if simple negligence were the rule, a party claiming an erroneous but good faith interest in real property would not be entitled to litigate his claim and have an adjudication without fear of being penalized in damages. *See, e.g., Ward v. Mid-West & Gulf Co.*, 1923 OK 972, 97 Okla. 252, 223 P. 170; *see also* RESTATEMENT (SECOND) OF TORTS § 773 (AM. LAW INST. 1979) (recognizing privilege to assert claim in good faith). These heightened requirements further the policy of protecting the rights of property owners by encouraging property owners to assert valid property rights while protecting property owners from unlawful claims. Thus, we agree with Chicago Title that recognizing liability for the "negligent recording" of a facially valid instrument would have a chilling effect on recording documents and undermine the goals of RCW 65.08.070. Policy supports our answer of no; to hold otherwise would frustrate Washington's policy of protecting property rights through the title recording process.

IV.     Considerations of common sense, logic, and justice provide further support

Our conclusion that title insurance companies do not owe third parties a duty of care when recording legal instruments is consistent with Washington's policies and precedent. The remaining considerations of common sense, logic, and justice only reinforce this conclusion.

A. *Logic and common sense weigh against finding a duty of care*

Logic and common sense require us to reject Plaintiffs' argument that Chicago Title's duty of care to CP III arises out of Centrum Financial's instruction to Chicago

23

Title directing it to record the leasehold deed of trust only if they are committed to providing title insurance. That instruction reads in full:

> You may record the Leasehold [deed of trust], provided you are irrevocably committed to insure the enclosed Mortgage, on a mortgagee's extended basis with coverage of $10,000,000.00, as a valid SECOND lien against the leasehold property which is the subject of the commitment for title insurance issued under the referenced file number, subject only to the matters set forth therein.

2 Appellant's Excerpts of R. at 58.

This instruction plainly directs Chicago Title to issue an insurance policy on the mortgage and to record if it is committed to issue that insurance policy. Chicago Title did so: it issued a commitment, insured the lien as valid, and recorded it. Under *Barstad*, Chicago Title did not owe a duty to Centrum Financial (its actual client) in issuing the title commitment because the commitment was for Chicago Title's benefit. 145 Wn.2d at 541. If the lien was not valid, Centrum Financial may have had a claim under its insurance policy. But it is impossible to understand how this action and agreement between Centrum Financial and Chicago Title created a duty to CP III when CP III could not possibly have relied on the commitment or the insurance policy. *See ESCA Corp.*, 135 Wn.2d at 832 (accountant did not owe a duty of care to bank absent justifiable reliance on accountant's draft report in making loan).

As a matter of logic and common sense, CP III is not entitled to something for nothing; not having entered into a contract with Chicago Title relating to future recordings, CP III is not entitled to the benefit of Centrum Financial's bargain with Chicago Title. Nor are they entitled to have Chicago Title review operating agreements and presumably lengthy loan agreements without a contract for—and paying for—that

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

benefit. These factors reinforce our conclusion that title insurance companies do not owe third parties a duty of care when recording legal instruments.

### B. *Justice does not support finding a duty to search for and disclose potential title defects to third-party nonclients*

Finally, considerations of justice do not support finding a duty of care for the recording of these legal instruments. This factor supports placing liability on the party best able to mitigate or control the anticipated harm. *Cf. Affil. FM Ins. Co.*, 170 Wn.2d at 453-54 (responsibility on party best able to mitigate the risks; balancing engineer's ability to design a project safely against an "innocent party who never had the opportunity to negotiate the risk of harm"); *see also Zabka v. Bank of Am. Corp.*, 131 Wn. App. 167, 173, 127 P.3d 722 (2005) (bank owed no duty of care to plaintiffs who could have easily taken steps to avoid fraud by bank's customer). Here, the manager of CP III had signed the documents filed by Chicago Title. When facially valid instruments are at issue, justice supports placing liability on the parties to those instruments.

Plaintiffs urge us to hold that justice requires title insurance companies to look behind the signatures on the document and police the parties' agreements against conflicting corporate documents or loan agreements. This is not a just result, and placing this burden on title insurance companies increases their costs, slows the recording process, and frustrates public policy, with no appreciable benefit. Here, the existence of the invalid liens was the result of an (arguably invalid) agreement between CP III and Centrum Financial. These liens, which were signed and notarized by CP III's manager, placed CP III in default and caused damages. These actions

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

placed CP III in default regardless of any action taken by Chicago Title. We decline to impose these damages on Chicago Title.[14]

After considering each of the duty factors, we hold that title insurance companies do not owe third parties a duty of care when recording legal instruments.

## CONCLUSION

In light of the foregoing, we answer the certified question as follows:

Question: Does a title company owe a duty of care to third parties in the recording of legal instruments?

Answer: No.

---

[14] Plaintiffs' argument that Chicago Title "knew" it was recording invalid liens is unavailing. Chicago Title conceded, for the purposes of its summary judgment motion arguing that it did not owe Plaintiffs a duty, that it could be charged with knowledge of the GECC loan agreement's prohibition on secondary liens because it had access to that information but did not check it. Washington recognizes that both actual and constructive notice provides a party with knowledge of another person's real property interest. *E.g., Miebach v. Colasurdo,* 102 Wn.2d 170, 175-76, 685 P.2d 1074 (1984). Requiring title insurance companies to look behind every facially valid instrument because they have documents in their possession that may undermine that instrument frustrates public policy, increases costs, and asks title insurance companies to police legal instruments entered into by the independent parties.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Centurion Props. III, LLC v. Chicago Title Ins. Co.*, No. 91932-1

_____
                                    Wiggins, J.

WE CONCUR.

_____    _____
Madsen, C.J.                                Stephens, J.

_____    _____
Johnson, J.                                 González, J.

_____    _____
Owens, J.                                   Gordon McCloud, J.

_____    _____
Fairhurst, J.                               Yu, J.