IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DEBORAH PHIFER, Personal | ) | No. 36572-7-III |
| Representative of the Estate of | ) | |
| Fred Phifer, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| STATE OF WASHINGTON | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES; CITY OF YAKIMA, a | ) | |
| municipal corporation, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — Deborah Phifer, personal representative of the estate

of Fred Phifer (Estate), appeals the trial court's order summarily dismissing the Estate's

negligence claim against the Washington State Department of Labor and Industries

(Department). The Estate contends the trial court erred because the Department either

owed or breached certain duties to Mr. Phifer. We conclude the Department did not owe

or breach any of the duties articulated by the Estate and affirm.

No. 36572-7-III
*Phifer v. Dep't of Labor & Indus.*


FACTS

Consistent with our standard of review, we set forth the facts in the light most favorable to the Estate. *See Herring v. Texaco, Inc.*, 161 Wn.2d 189, 194, 165 P.3d 4 (2007).

In July 2008, Mr. Phifer filed a workers' compensation claim with the Department for an on-the-job injury. The Department assigned Mr. Phifer a case manager, Annabea Alvarado. One month later, Mr. Phifer called Ms. Alvarado repeatedly. Ms. Alvarado eventually returned the call. Ms. Alvarado began lecturing Mr. Phifer, telling him not to call so often and asked questions such as, "'What do you do all day, lay around and watch TV all day?'" Clerk's Papers (CP) at 13.[1] Mr. Phifer told her that he was doing what his

---

[1] In July 2013, Mr. Phifer signed and filed a declaration that sets forth his version of events. In April 2018, the Department brought the motion that is the subject of our review. The Estate's summary judgment response did not cite Mr. Phifer's 2013 declaration, but it did assert facts contained in that declaration. Probably for this reason, the summary judgment order does not list the 2013 declaration as being considered by the trial court.

On appeal, we consider only evidence and arguments called to the attention of the trial court. RAP 9.12. To facilitate a proper review, all pleadings considered by the trial court are required to be listed in the summary judgment order. *Id.* Normally, evidence considered by the trial court but not listed in the order is required to be listed in a supplemental order. *Id.*

On appeal, the Estate repeatedly cites Mr. Phifer's 2013 declaration. The Department does not object—a tacit acknowledgment that the trial court considered the evidence contained in the 2013 declaration. For these reasons, we too consider that declaration, and waive compliance with RAP 9.12. *See* RAP 1.2(a).

2

doctor ordered, intermittently resting followed by activity. Ms. Alvarado then asked what he was doing right at that moment, to which Mr. Phifer replied he was sharpening his wife's knives. Ms. Alvarado put Mr. Phifer on hold for 5 to 10 minutes. When she got back on the line, she told him the Department would send some partial payments and told him not to call so much.

After hanging up the telephone, Mr. Phifer went back to sharpening his wife's knives. Ms. Alvarado, meanwhile, called the police and informed them Mr. Phifer was suicidal and had knives. After a few minutes, Yakima police arrived at Mr. Phifer's house. They asked to come in and Mr. Phifer consented.

Once inside, the officers interviewed Mr. Phifer. Mr. Phifer said he was depressed, but not suicidal. He also made a reference to going to heaven, but then said he did not mean anything by it. The officers then put Mr. Phifer in handcuffs. Officers told Mr. Phifer he could not leave until an evaluator arrived. After about 30 minutes, the evaluator still had not arrived. The officers had other duties and could not wait idly any longer. They handcuffed Mr. Phifer, and drove him to the police station where they cuffed him to a pipe. He spent 45 minutes cuffed to a pipe before being released.

After her call with Mr. Phifer, Ms. Alvarado filed a report with the Department. The report reads:

rtc to status not happy the way things were going, was having very bad
thoughts, he felt like a loser, feels like he has hit a brick wall and feels like
ending it all.  [S]ays supervisor at magic metals caused his mental health
issue.  [S]ays that he is about to lose his house. cm advised would pay
provisional until we get things sorted out, stated bas been seeing [D]r.
[L]efors since 05/22/08.  [H]as always had back problems has 7 messed up
discs.  [I]n the past has gone thru dvr was trained for real estate did that for
14 years . . . . asked iw if he wanted cm to contact mental health or
authorities to pay him a visit to discuss his bad thoughts stated no, he would
like to speak w/dr. wms . . . . per protocal [sic] cm notified yakima polide
[sic] dept.

CP at 194.

At the time of this incident, an internal policy of the Department provided:

When an injured worker tells you that he/she is threatening to commit
suicide, you need to contact the appropriate County Law Enforcement
Agency in the county where the worker lives.  The list of County "Suicide
and Crisis Phone Numbers," is attached.  Although we are not asking you to
also contact the "Crisis/Mental Health Agency," that agency is listed for
your information as well.  As a courtesy, you should also contact the
worker's attending physician, and in particular, the worker's psychiatrist if
one is providing care under the claim.

CP at 396.

Being arrested, cuffed, and taken to the police station lit up Mr. Phifer's dormant

posttraumatic stress disorder (PTSD), originally caused by being beaten almost to death

by police officers in the 1970s.

In September 2011, Mr. Phifer and his wife, Deborah Phifer, filed a complaint

against the Department and the city of Yakima.  The complaint brought several causes of

4

action, including negligence, outrage, negligent training, loss of consortium, and violation of 42 U.S.C. § 1983.

Sometime before June 2012, the city of Yakima filed a motion for partial summary judgment on the 42 U.S.C. § 1983 claim. The Department joined the motion. The trial court granted the motion and dismissed that claim.

In July 2012, the Department and the city filed motions for summary judgment on all their other claims. The parties stipulated that the outrage and the loss of consortium claims should be dismissed. The trial court granted the city's motion, but denied the Department's motion with respect to the negligence and the negligent training claims.

In July 2013, the Department filed another motion for summary judgment. The trial court denied the motion as to the negligence claim, but granted it on the negligent training claim.

In April 2018, the Department filed its final motion for summary judgment. By then, Mr. Phifer had passed away, and the Estate had substituted as party-plaintiff. The trial court originally denied the Department's motion. On November 20, 2018, it reconsidered its order sua sponte, and entered the following order:

> The court will grant Defendant's motion for summary [sic] on Dec [sic] 4, 2018, if Plaintiff has not filed additional briefing on the issue of special relationship that convinces the court not to grant summary judgment.

CP at 371.

The Estate filed several pleadings on December 4, 2018. Two days later, the trial court entered the order that granted the Department's motion. The pretyped order listed the pleadings considered by the trial court, and the trial court hand-wrote four additional pleadings onto the typed list. Neither the typed nor the handwritten list included the December 4, 2018 pleadings filed by the Estate.[2]

The Estate timely filed this appeal.

ANALYSIS

This court reviews summary judgment orders de novo and views the evidence in the light most favorable to the nonmoving party. *Herring*, 161 Wn.2d at 194. We perform the same inquiry as the trial court. *Keck v. Collins*, 181 Wn. App. 67, 78, 325 P.3d 306 (2014), *aff'd*, 184 Wn.2d 358, 357 P.3d 1080 (2015). Summary judgment is only appropriate when there is no genuine issue as to any material fact, and the pleadings show the moving party is entitled to judgment as a matter of law. *Id.* at 78-79. For example, summary judgment is appropriate when the responding party fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[2] We doubt the trial court considered the late pleadings. Had it considered them, it would have added the December 4, 2018 filings to its handwritten list.

and on which that party will bear the burden of proof at trial. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

Here, the trial court dismissed the Estate's negligence claim against the Department. A negligence claim requires a plaintiff to prove four elements: (1) there existed a duty owed by the defendant to the plaintiff, (2) the defendant breached that duty, (3) damage resulted, and (4) the damage was proximately caused by the defendant's breach. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). In addition, an employer is liable for the negligent acts of its employees occurring within the scope of their employment. *Rahman v. State*, 170 Wn.2d 810, 815, 246 P.3d 182 (2011). The trial court dismissed the Estate's negligence claim because it bore the burden of establishing the Department owed and breached a duty, and it failed to articulate any duty owed or breached.

The Estate argues the trial court erred. Specifically, the Estate argues the Department is vicariously liable for Ms. Alvarado's actions, and Ms. Alvarado had the following duties: (1) to listen and ask appropriate questions to determine how to respond to Mr. Phifer, (2) to empathize and listen, in accordance with RCW 43.70.445, (3) to act consistent with the Department's internal memo, and (4) a heightened and special duty to properly respond to injured workers asserting claims. Most of the Estate's arguments

7

complain that Ms. Alvarado should have more closely listened to Mr. Phifer and, instead of calling the police, she should have called his doctor.

THE ESTATE FAILED TO ARTICULATE A DUTY OWED

When determining if a defendant owes a duty to a plaintiff, this court considers many factors, including "logic, common sense, justice, policy, and precedent, as applied to the facts of the case." *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 186 Wn.2d 58, 65, 375 P.3d 651 (2016).

A person is not tortiously liable for reporting a matter of concern to law enforcement, or for the actions taken by law enforcement following the report. In *Parker v. Murphy*, 47 Wash. 558, 560, 92 P. 371 (1907), a shop owner called the police on a former employee after the former employee kept harassing the owner at his shop. *Id.* at 559. Police officers came and arrested the former employee without the owner's request or knowledge. *Id.* The court held that the owner could not be liable for an action of false imprisonment when he had simply called the police and the officers had acted on their own initiative. *Id.* at 560.

Here, Ms. Alvarado did nothing other than what the shop owner did in *Parker*. Ms. Alvarado called the police and related her concerns. She did not ask the officers to

arrest Mr. Phifer nor did she suggest they do so. The officers, who are trained to assess suicide risk, arrived on the scene and acted on their own initiative.

Reporting a potentially suicidal person does not create an appreciable risk of harm to that person. Not reporting a potentially suicidal person does create an appreciable risk. Logic, common sense, policy, and precedent do not support imposing liability on persons for reporting suicidal people.

We now comment on the Estate's more specific arguments.

*1.     RCW 5.40.050 does not apply here*

The Estate first argues that Ms. Alvarado violated the Department's internal policy and, in doing so, she was negligent. In support of its argument, the Estate cites RCW 5.40.050. That statute generally makes violation of a statute, ordinance, or administrative rule evidence of negligence. We reject the Estate's first argument.

RCW 5.40.050 has no application here, to an internal agency policy. Also, Ms. Alvarado did not violate the internal policy. The internal policy read "[w]hen an injured worker tells you that he/she is threatening to commit suicide, you need to contact the appropriate County Law Enforcement Agency in the county where the worker lives." CP at 396. This policy did not direct case managers *not* to contact authorities if they

9

suspected callers were suicidal. For this reason, Ms. Alvarado did not violate the Department's internal policy.

    2.    *RCW 43.70.445 does not impose liability on a Department case manager*

The Estate next argues that Ms. Alvarado failed to act in accordance with RCW 43.70.445. In 2017, RCW 43.70.445(1)(a) was amended to add that it creates a "suicide-safer homes task force." The charge of the task force is to develop trainings and messaging to enhance suicide prevention and to train various groups. Those groups do not include Department employees.

The applicable version of RCW 43.70.445(1)(a) was not effective until nearly one decade after Ms. Alvarado's phone call with Mr. Phifer and does not impose duties on Department claims managers. The Estate fails to adequately explain how this statute results in a 2008 duty of care from Ms. Alvarado to Mr. Phifer.

    3.    *We do not review the Estate's heightened-duty claim*

The Estate finally contends that the Department owed a heightened duty to act in good faith toward Mr. Phifer, due to the nature of their special relationship. Specifically, the Estate argues the Department owed Mr. Phifer a duty of good faith as an insurer.

10

No. 36572-7-III
*Phifer v. Dep't of Labor & Indus.*

As previously noted, our review of a summary judgment order is typically limited to the evidence and arguments considered by the trial court. Here, the trial court did not consider this argument. Neither will we.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

11